**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Elson STRAHAN, Jr., Defendant–Appellant.**

**No. 92–5173.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1992.

Decided Jan. 15, 1993.

Rehearing Denied Feb. 22, 1993.

**156**

John Fowlkes (argued), and Linda Harris (briefed), Asst. U.S. Attys., Office of the U.S. Attorney, Memphis, TN, for plaintiff-appellee.

April R. Ferguson, Asst. Federal Public Defender (argued, briefed), Memphis, TN, for defendant-appellant.

Before BOGGS and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.

BOGGS, Circuit Judge.

This is an appeal from a guilty plea on charges of possession of cocaine with intent to distribute and using and carrying a firearm during a drug trafficking offense. Appellant contends that the district court improperly denied his motion to suppress the cocaine and the firearm. For the reasons stated, we affirm on the cocaine count, but reverse the denial of the motion to suppress the weapon.

I

Officer Cecil Wages of the Memphis Police Department received a telephone call on February 22, 1991. The caller related that the defendant, Elson Strahan, recently had been released from jail, was staying in room 510 of the Royal Oaks Motel, and went to the Macon Road Lounge every day at about 10 a.m. and sold cocaine. The caller also stated that the defendant might have a pistol.

Wages recognized the voice as that of a frequent supplier of police information. The caller had provided information about the defendant on August 1, 1990. On that date, the caller stated that Strahan was wanted for a crime, possibly murder, and was armed. Based upon this information, Wages investigated Strahan, found that he was wanted for burglary, and then arrested him. Strahan served time in Louisiana for this offense.

Based upon the new information supplied by the caller, Wages and Sergeant Huff went to the Royal Oaks Motel. True to the caller's report, the defendant left room 510 shortly after 10 a.m. and began driving toward the Macon Road Lounge. The officers saw the defendant park at the back of the lounge and then hurriedly leave his vehicle. The officers believed that the defendant moved hurriedly because he recognized the police vehicle, a distinctive Ford wagon with blacked-out windows, which the officers had used to arrest Strahan on the prior occasion.

Officer Huff jumped out of his car once the defendant moved toward the lounge, and apprehended Strahan outside the doorway of the lounge, approximately thirty

feet from defendant's automobile. Officer Wages began patting Strahan down, fearing that he might have a weapon. Wages testified that he had this concern based upon the informant's comments, his prior experience with the defendant, and the defendant's alleged membership in the Banditos motorcycle gang, a group whose members carry weapons.[1] Wages then felt a bulge in the defendant's left coat pocket. The officer testified that he thought "it might have been some kind of weapon." Wages therefore reached into the pocket and discovered cocaine, a money clip, and some money. Wages then searched the car and found a gun.

The defendant's version of the facts differs. He claims that the officers jumped out of the car, placed him under arrest outside of the lounge, and failed to read him his *Miranda* rights. Strahan also stated that he did not hurry to the door of the lounge.

The defendant filed a motion to suppress both the cocaine and the gun found in the car. The magistrate judge adopted Officer Wages's statement of the facts, and recommended that the suppression motion be denied. After a *de novo* hearing, the district court entered its order denying the motion to suppress. The defendant then entered into a plea agreement, pursuant to which he preserved his right to appeal the denial of the motion to suppress. The district court sentenced the defendant to twenty-seven months' imprisonment on count one for unlawfully, knowingly, and intentionally possessing approximately five grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Strahan received a consecutive sentence of sixty months on count two for using and carrying a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). Three years of supervised release are to follow the imprisonment.

Defendant now appeals the denial of his motion to suppress both the cocaine found in his pocket and the gun located in the car. We affirm the admittance of the cocaine, but reverse the denial of the motion to suppress the gun.

## II

■ As a preliminary matter, defendant argues that both the district judge and the magistrate judge failed to state adequately their reasons for adopting Officer Wages's statement of the events. Strahan relies upon *United States v. Cooke*, 915 F.2d 250 (6th Cir.1990). In that airport search case, the district court, without explanation, discounted the defendant's statement of the facts. In dicta, we stated that in airport search cases, credibility is crucial. Accordingly, we stated that "it would be helpful if district judges or magistrates conducting suppression hearings would indicate why they are crediting one party over another when the versions of what occurred differ in material detail." *Id.* at 252.

Defendant is mistaken in arguing that *Cooke* necessitates a remand. The district court, after a *de novo* hearing, did state its reasons for crediting certain witnesses over others. Moreover, *Cooke* is merely hortatory in stating that "it would be helpful" if judges explained their credibility determinations. The court does not state that failure to do so mandates remand. Furthermore, the court in *Cooke* emphasized that its comments only applied to airport search cases. The findings of both the magistrate judge and the district judge were adequate.

## III

■ Appellant next argues that the police actions constituted an improper stop and frisk under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This position is incorrect. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), governs this case. In *White*, officers received information from an anonymous caller that White would be delivering cocaine at a specified time and location. The officers followed defendant to this location and conducted a *Terry* stop. The search uncovered cocaine. The defendant

---

1. Louisiana authorities told Wages about Strahan's involvement with this gang.

moved to suppress, arguing that the anonymous call did not justify a *Terry* stop. The court held that the anonymous call, standing alone, did not justify a *Terry* stop. However, the tip, plus behavior that corroborated the tip, did justify the stop.

Similarly, in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court held that an informant's tip may, with some corroboration, provide sufficient evidence for a *Terry* stop and frisk. *Id.* at 147, 92 S.Ct. at 1926. In the instant case, the officers had sufficient evidence to support a *Terry* stop. The officers received accurate information from a reliable source regarding the defendant's location and modus operandi.[2] The officers had information from Louisiana that defendant was dangerous, and they also knew the individual from his prior arrest. Based upon this evidence, the officers' behavior was reasonable. A *Terry* stop was proper.

■ Pursuant to a *Terry* stop, provided that an officer believes that a suspect may be dangerous, the officer may conduct a limited search for concealed weapons. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); W. LaFave, *Search and Seizure*, § 9.4(c) at 522 (2d ed. 1987). In this case, Officer Wages believed that the defendant might be dangerous based upon the tip, his knowledge of the defendant's past conduct, and information supplied by Louisiana authorities. Therefore, a search for weapons was reasonable.

■ Officer Wages stated that while patting down the defendant, he felt a bulge in the left coat pocket.[3] Wages felt into the coat and uncovered cocaine, money, and a money clip. Defendant argues that even if a *Terry* stop and frisk was permissible, this search exceeded *Terry*'s scope. As stated in *Terry*, "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer...." *Terry*, 392 U.S. at 25–26, 88 S.Ct. at 1882. *Terry* allows only an examination for concealed objects and forbids searching for anything other than weapons. *Ybarra v. Illinois*, 444 U.S. 85, 92–94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1980).

Based upon the officer's knowledge of the defendant and the contours of the bulge, the officer reasonably believed that the bulge could be a weapon. Part of the bulge consisted of a money clip. This clip provided rigidity to the bulge, which made it more likely that the defendant possessed a weapon.[4] The officer's concern that the defendant possessed a weapon is further buttressed by the alarming rate of attacks upon law enforcement officers. In 1991, sixty-nine law enforcement officers were killed in the line of duty. *United States v. Clipper*, 973 F.2d 944, 950 (D.C.Cir.1992). Given the contours of the bulge, and the reasonable apprehension experienced by officers on duty, the officer certainly had a reasonable expectation that the bulge could be some type of weapon. Accordingly, it was proper to reach into the pocket and remove the contents.

---

2. Defendant argues that this source was not reliable because in 1990 he mistakenly had said that defendant was wanted for murder, not robbery. This variance does not make the source unreliable.

3. Wages testified as follows:
   Q. Did you know what was in his pocket at that time?
   A. No, ma'am.
   Q. From the feel could you feel what it was?
   A. No, ma'am.
   Q. And what did you suspect at this time?
   A. I thought it might have been some kind of weapon.
   Q. Why did you suspect that?
   A. Because motorcycle men sometimes carry weapons in billfolds. They could be in any shape, form or fashion.
   Q. Was it based on anything else that you felt—
   A. The information from the informant and the prior experience.

4. The present case presents less difficulty than *United States v. Anderson*, 859 F.2d 1171, 1177 (3rd Cir.1988). In that case, the officer felt a bulge and removed only cash. In spite of the lack of rigidity to the bulge, the court did not suppress the money.

## IV

A separate examination is necessary of the propriety of the search of the vehicle. This search led to the discovery of the gun. The defendant contends that this weapon should be suppressed.

In *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), the Supreme Court held that an officer making a custodial arrest may search the person in custody and the "area within his immediate control." *Chimel* mandates case-by-case evaluation of what constitutes the "area within [one's] immediate control." The Supreme Court addressed the applicability of *Chimel* to automobile search cases in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In that case, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460, 101 S.Ct. at 2864. *Belton* established a bright-line rule for automobile search cases. W. LaFave, *Search and Seizure* § 7.1 at 136 (2d ed. 1987). When an occupant of a vehicle is arrested, the police may lawfully search the passenger compartment.

In *United States v. White*, 871 F.2d 41 (6th Cir.1989), this court held that *Belton* governs when the arrestee is removed from the car prior to the time of the search. *White* comports with other circuits that have addressed this issue. *See, e.g., United States v. Karlin*, 852 F.2d 968, 971–72 (7th Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Cotton*, 751 F.2d 1146, 1149 (10th Cir.1985); *United States v. McCrady*, 774 F.2d 868, 871–72 (8th Cir. 1985). *White*, in following *Belton*, applies only where the police initiate contact while the defendant is within his automobile, but subsequently remove the arrestee.[5] Indeed, *Belton* clearly limits its application to only those settings where an officer makes a custodial arrest "of the *occupant* of an automobile...." *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864. (emphasis added).

Because Strahan was approximately thirty feet from his vehicle when arrested, *White* and *Belton* are inapplicable. The police did not make an arrest of an occupant of a vehicle. Accordingly, the *Chimel* test governs. Because the passenger compartment of the vehicle was not within Strahan's "immediate control" at the time of the arrest, the search was not incident to a lawful arrest, and suppression is proper.

*United States v. Fafowora*, 865 F.2d 360 (D.C.Cir.1989), addressed this exact issue. In *Fafowora*, the officers arrested the defendants while the defendants were walking away from their jeep. The officers then searched the jeep and found drugs. The court held that the vehicle search was improper. The court reasoned that *Belton* did not apply because the contact with the defendants occurred well outside of the car. The court then concluded that the search was not incident to the arrest. The present case is indistinguishable from *Fafowora*. Strahan was a good distance away from the automobile when confronted and arrested by the officers. *White* only governs if the police remove the defendant from the vehicle. Accordingly, suppression of the weapon is required.[6]

For the foregoing reasons, we AFFIRM the district court's denial to suppress the cocaine. We REVERSE the district court's denial of the motion to suppress the weapon, and REMAND for further proceedings.

---

5. In *Belton*, the officer removed the defendant from his vehicle prior to making the search of the vehicle.

6. We note that *United States of America v. Dobson*, No. 91–5978, 1992 WL 276773, 1992 U.S.App. Lexis 25970 (6th Cir. October 7, 1992) (per curiam) deals with a similar issue. We believe that there are distinguishing features between the instant case and *Dobson*, but in any event, we do not deem *Dobson*, an unpublished opinion, to be controlling.