35 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert M. CARTHORN, Defendant-Appellant.
 No. 93-6593.
 United States Court of Appeals, Sixth Circuit.
 Sept. 8, 1994.
 
 Before: KEITH and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Robert M. Carthorn appeals his jury convictions of one count of conspiracy to possess a mixture of cocaine base (crack cocaine) and marijuana with intent to distribute in violation of 21 U.S.C. Sec. 846, one count of possession of a mixture of cocaine base and marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), and one count of intentionally carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c)(1). On appeal, the sole issue is whether the district court erred in denying defendant's motion to suppress evidence seized during a Terry protective search on March 31, 1992. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On March 31, 1992, at approximately 4:00 a.m., Officer Robin Alexander of the Chattanooga (Tennessee) Police Department was on routine patrol when he observed an automobile parked away from the curb in the 700 block of Flynn Street "in front of a known drug house." J.A. 25. Officer Alexander had previously made drug arrests in front of this same house, and the area was known to be a drug area. Two individuals were in the automobile. Terrance Ware was in the front seat of the automobile and defendant was in the back seat. At the time Officer Alexander arrived on the scene, two females were standing outside the automobile on the front porch of the drug house.[1]
 
 
 3
 As Officer Alexander approached the automobile, he noticed that defendant was trying to stuff something into the back seat. Officer Alexander radioed for backup police officers and turned on the take-down lights on his police cruiser. Officer Alexander then got out of his cruiser and approached the automobile. As he neared the automobile, he recognized the defendant from a previous encounter.[2]
 
 
 4
 Officer Alexander testified that as he approached the automobile in the early morning hours of March 31, 1992, he was concerned that he might have interrupted a drug transaction. He further testified that when he observed defendant stuffing something into the back seat, he was also concerned about the presence of a weapon. Further, when Officer Alexander recognized defendant, he became even more concerned about the potential presence of a weapon due to his past experience with defendant.
 
 
 5
 Accordingly, Officer Alexander asked defendant to get out of the automobile. Officer Alexander asked defendant what he was doing there at that time of night. Defendant replied that "he wasn't doing nothing." J.A. 40. Officer Alexander performed a pat-down search of defendant and walked defendant over to his police cruiser, which was parked a few feet behind the automobile in which defendant had been sitting. Because Officer Alexander was the only policeman at the scene, he told defendant to stand with his palms down on the hood of the police cruiser, and he did not ask Mr. Ware to exit the automobile.
 
 
 6
 When additional police officers arrived, Officer Alexander ordered Mr. Ware out of the automobile. At that point, Officer Alexander began searching the back seat of the automobile where defendant had apparently been attempting to stuff something into the seat. Officer Alexander found a Ziploc plastic bag containing a bag of crack cocaine, a pill bottle of crack cocaine, and a bag of marijuana.[3] Officer Alexander continued his search of the automobile. Thereafter, he found a loaded .38 caliber revolver under the driver's seat, and some boxes of ammunition were found in the glove compartment. Also, approximately $935 was seized from defendant's person. Subsequently, Officer Alexander counted a total of 54 rocks of crack cocaine, weighing approximately 6.5 grams, in the Ziploc bag.
 
 B.
 
 7
 On May 25, 1993, a federal grand jury issued a five-count indictment. Defendant was named in four of the five counts of the indictment. Count one of the indictment charged defendant with conspiracy to possess a mixture of cocaine base and marijuana with intent to distribute in violation of 21 U.S.C. Sec. 846. Count two of the indictment charged defendant with possession of a mixture of cocaine base and marijuana with intent to distribute in violation of 21 U.S.C. Sec. 842(a)(1). Count three of the indictment charged defendant with possession of marijuana with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Count four of the indictment charged defendant with possession of a firearm, a loaded .38 caliber revolver, during and in relation to a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c)(1).
 
 
 8
 Defendant was arraigned and entered pleas of not guilty on June 3, 1993. On June 21, 1993, defendant filed a motion to suppress the physical evidence seized on the date of his arrest, March 31, 1992. A hearing on the motion to suppress was held on August 9, 1993. Thereafter, on August 10, 1993, the district court issued a memorandum and order denying defendant's motion to suppress.
 
 
 9
 A jury trial on the charges against defendant commenced on September 21, 1993. The following day, the jury returned guilty verdicts on all of the charges against defendant.
 
 
 10
 A sentencing hearing was held on November 29, 1993. Defendant was sentenced to a total of 138 months in prison to be followed by a total of four years of supervised release. Specifically, defendant was sentenced to 78 months in prison on each of counts one and two and 60 months in prison on count three, with the sentences to run concurrently to one another. Defendant was sentenced to 60 months in prison on count four, with the sentence to run consecutively to the sentences imposed on counts one, two, and three. This timely appeal followed.
 
 II.
 
 11
 Defendant argues that the district court erred in denying his motion to suppress the evidence seized on March 31, 1992, because Officer Alexander's search of the automobile in which he was a passenger was in violation of the Fourth Amendment to the United States Constitution as well as existing case law. Before the district court, defendant argued that the search of the automobile was illegal because evidence was taken from the vehicle without a warrant, and the circumstances surrounding the search of the automobile did not fall within any exception to the warrant requirement.
 
 
 12
 The district court concluded that Officer Alexander had an articulable, reasonable suspicion of criminal activity sufficient to justify his approaching the automobile and asking defendant and Ware their purpose in being at that location. Further, relying on the Supreme Court's decision in Michigan v. Long, 463 U.S. 1032 (1983), the district court found that once Officer Alexander recognized defendant and observed his attempting to hide something in the back seat of the automobile, Officer Alexander had sufficient justification for a protective search of the passenger compartment of the automobile for weapons. Consequently, the district court denied defendant's motion to suppress.
 
 
 13
 When reviewing a district court's denial of a motion to suppress evidence, this court must consider the evidence in the light most favorable to the government. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993). The denial of the " 'motion to suppress will be affirmed on appeal if proper for any reason.' " Id. (quoting United States v. Barrett, 890 F.2d 855, 860 (6th Cir.1989). Furthermore, this court " 'must accept the findings of fact upon which the district court relied in dealing with suppression of evidence unless those findings are clearly erroneous.' " Id. (quoting United States v. French, 974 F.2d 687, 691 (6th Cir.1992), cert. denied, 113 S.Ct. 1012 (1993)). However, the district court's application of the facts to the law is subject to de novo review. Id.; United States v. Briggman, 931 F.2d 705, 708 (11th Cir.) (per curiam), cert. denied, 112 S.Ct. 370 (1991).
 
 
 14
 There are narrowly drawn exceptions to the Fourth Amendment requirement that all searches and seizures be based upon probable cause, including the investigatory detention or Terry stop. Garza, 10 F.3d at 1245. A lawful Terry stop requires that the authorities be able to point to "specific and articulable facts" which justify a reasonable suspicion that a suspect has been or is about to be involved in criminal activity. Id. (citing United States v. Sokolow, 490 U.S. 1, 12 (1989), and Terry v. Ohio, 392 U.S. 1, 21 (1968)). While an officer need not have probable cause to make a Terry stop, the officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' " Sokolow, 490 U.S. at 7 (quoting Terry, 392 U.S. at 27); see also United States v. Roberts, 986 F.2d 1026, 1029 (6th Cir.), cert. denied, 114 S.Ct. 271 (1993). Further, the validity of a Terry stop must be evaluated based upon the totality of the circumstances. Sokolow, 490 U.S. at 8.
 
 
 15
 "Even if each specific fact relied upon by the authorities to make a Terry stop would not be a basis for suspicion when considered in isolation, the reasonable suspicion necessary to support an investigatory stop can still be found when it is 'based upon an assessment of all circumstances surrounding the actions of a suspected wrongdoer[,]' including those facts that would arouse suspicion only in someone experienced in law enforcement matters." Garza, 10 F.3d at 1245 (quoting United States v. Knox, 839 F.2d 285, 290 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989)). "The reasonableness [of a Terry stop] is determined by examining two factors: (1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the official's conduct given their suspicions and the surrounding circumstances." United States v. Hardnett, 804 F.2d 353, 356 (6th Cir.1986), cert. denied, 479 U.S. 1097 (1987).
 
 
 16
 During a Terry stop, a police officer may conduct a limited search for concealed weapons provided that the officer believes that a suspect may be dangerous. United States v. Strahan, 984 F.2d 155, 158 (6th Cir.1993) (citing Adams v. Williams, 407 U.S. 143 (1972)). " 'When an officer is justified in believing that [an] individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others,' he may conduct a limited protective search for concealed weapons." Adams, 407 U.S. at 146 (quoting Terry, 392 U.S. at 24). "The purpose of this [protective] search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." Id. However, the search must " 'be strictly circumscribed by the exigencies which justify its initiation. Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer....' " Strahan, 984 F.2d at 158 (quoting Terry, 392 U.S. at 25-26). Furthermore, "Terry allows only an examination for concealed objects and forbids searching for anything other than weapons." Id. (citing Ybarra v. Illinois, 444 U.S. 85, 92-94 (1980)). Accordingly,
 
 
 17
 the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable fact which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See Terry, 392 U.S. at 21, 88 S.Ct. at 1180. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id., at 27, 88 S.Ct., at 1883. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.
 
 
 18
 Michigan v. Long, 463 U.S. 1032, 1049-1050 (1983).
 
 
 19
 In this case, Officer Alexander was aware of specific and articulable facts which, along with the reasonable inferences from those facts, warranted his belief that defendant was dangerous and could gain control of a weapon. Officer Alexander saw the defendant seated in the back seat of an automobile parked in a known drug area in front of a known drug house at 4:00 a.m. Further, on other occasions, Officer Alexander had personally made arrests at that same location. Moreover, when Officer Alexander parked his police cruiser some ten feet behind the automobile and turned on his take-down lights, his reasonable suspicions, as well as the need for further investigation, were heightened by defendant's noticeable and furtive activity; namely, defendant's attempt to conceal something from Officer Alexander by stuffing it into the back seat. The grounds for investigation were further heightened when Officer Alexander approached the automobile and recognized defendant as someone who had possessed a weapon and had been involved in an attempted shooting a few days before.
 
 
 20
 Considering the circumstances of the early morning hours of March 31, 1992, particularly in light of Officer Alexander's prior experience with defendant, we hold that the district court's finding that Officer Alexander had a reasonable and articulable suspicion that defendant was armed or had a weapon in the vehicle was not clearly erroneous. Accordingly, Officer Alexander's protective search of the passenger compartment of the automobile in which defendant had been a passenger was a permissible Terry protective search.[4] Moreover, Officer Alexander's search of the passenger compartment of the automobile was limited to those areas in which a weapon could be found, and although Officer Alexander found contraband other than weapons, namely, crack cocaine and marijuana, during the course of his protective search for weapons, the Fourth Amendment does not require suppression of this evidence. Long, 463 U.S. at 1049-50.
 
 B.
 
 21
 Defendant also argues that the Terry protective search performed by Officer Alexander was impermissible. Defendant asserts that at the time the protective search was performed, he and Mr. Ware were out of the automobile, and Officer Alexander was no longer afraid of being assaulted by either defendant or Mr. Ware, since there were four other police officers present. Therefore, defendant asserts the protective search was unnecessary.
 
 
 22
 Officer Alexander's testimony on this issue was as follows:
 
 
 23
 Defense Counsel: Okay. Now, at the time you went in and searched the vehicle, how many officers were there?
 
 
 24
 Officer Alexander: I think it was about four at the time. It ended up at least four officers was there.
 
 
 25
 Defense Counsel: Okay. And you were still afraid of being assaulted by these--
 
 
 26
 Officer Alexander: No, that was at the time when I was out with him by myself.
 
 
 27
 Defense Counsel: Okay. So, at this point you weren't really afraid of that?
 
 
 28
 Officer Alexander: No. I had necessary backup to handle the whole situation, if it got out of hand, to bring it under control.
 
 
 29
 Defense Counsel: Okay. Then you went in and searched the vehicle--
 
 
 30
 Officer Alexander: Yes.
 
 
 31
 J.A. 38-39. The Supreme Court has held that
 
 
 32
 [d]uring any investigative detention, the suspect is "in the control" of the officers in the sense that he "may be briefly detained against his will...." Just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect ... break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Or, ... the suspect may be permitted to reenter the vehicle before the Terry investigation is over, and again, may have access to weapons. In any event, we stress that a Terry investigation ... involves a police investigation "at close range," when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger...." In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a Terry encounter.
 
 
 33
 Michigan v. Long, 463 U.S. 1032, 1051-52 (1983) (citations omitted); see also United States v. Holifield, 956 F.2d 665, 669 (7th Cir.1992) ("In addition, the Supreme Court has rejected the reasoning that because the occupants have exited the vehicle and are under the control of officers, the officers could not reasonably believe that they could gain immediate control of a weapon located inside the vehicle. In such a traffic stop, a suspect 'under the brief control of a police officer ... might ... break away from police control and retrieve a weapon from his automobile.' ") (quoting Long, 463 U.S. at 1051). See also United States v. Paulino, 935 F.2d 739, 744, 747 (6th Cir.), cert. denied, 112 S.Ct. 315 and 323 and 660 (1991) and 112 S.Ct. 883 (1992) (the fact that six police officers approached defendants' vehicle "did not obviate the need for a protective search of the vehicle and its contents.").
 
 
 34
 Therefore, the mere fact that Officer Alexander did not perform his protective search of the passenger compartment of the automobile until defendant and Mr. Ware had exited the vehicle and were under the control of the four officers present did not deprive Officer Alexander of his reasonable and articulable suspicion that defendant could obtain a weapon from the vehicle, either by breaking away from the police or by reentering the vehicle after his brief detention by the police. Accordingly, Officer Alexander's subjective belief that the four police officers had the situation under control did not render his protective Terry search of the passenger compartment of the automobile for weapons invalid. Consequently, the district court's denial of the defendant's motion to suppress was not erroneous.
 
 III.
 
 35
 For the reasons stated, the district court's denial of defendant's motion to suppress is AFFIRMED.
 
 
 
 [1]
 The two females were searched by a female police officer but were not arrested
 
 
 [2]
 Approximately ten days prior to the events of the morning of March 31, 1993, Officer Alexander was on routine patrol in Chattanooga when he heard a gunshot. At that time, Officer Alexander was standing on the side of a building located in the 700 block of Martin Luther King Boulevard. After hearing the gunshot, Officer Alexander walked around to the front of the building and saw defendant struggling with another individual. It appeared to Officer Alexander that defendant was attempting to shoot the individual with whom he was struggling. Officer Alexander then approached the two individuals with his gun drawn and told them that he wanted to see their hands. Officer Alexander noticed defendant "toss something, like he was throwing something out of his hand to the ground." J.A. 27. After additional police officers arrived on the scene, Officer Alexander searched the area where he thought he had seen defendant toss something. Officer Alexander then "noticed the gun where [defendant] had tossed it. It was a little Dillenger [sic] chrome-plated .22" caliber gun. J.A. 27
 
 
 [3]
 Officer Alexander testified that when he performed the protective search of the car, "the plastic bag was still hanging out of the [back] seat. So, whoever tried to stuff it in there didn't do a pretty good job of stuffing it [into the back seat]." J.A. 32
 
 
 [4]
 At the hearing on the motion to suppress, defense counsel asked Officer Alexander if he searched the car for weapons or drugs:
 Defense Counsel: Okay. So, you went in there and searched for a combination of reasons then. Is that right?
 Officer Alexander: No, sir. I did what I considered a protective search for myself. If there was [sic] any weapons in that back seat, I wanted to know, and I didn't want to take his word alone.
 J.A. 34.