The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Barney SAVEDRA, Defendant–Appellee.

No. 95SA289.

Supreme Court of Colorado,
En Banc.

Dec. 11, 1995.

Alexander M. Hunter, District Attorney, Twentieth Judicial District, William F. Nagel, Appellate Deputy District Attorney, Boulder, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, John L. Lucas, Deputy State Public Defender, Boulder, for defendant-appellee.

Justice KOURLIS delivered the Opinion of the Court.

This is an interlocutory appeal pursuant to C.A.R. 4.1. The People challenge a trial court order suppressing cocaine obtained during a search of defendant Barney Savedra's truck. The search took place shortly after Savedra had been arrested. The trial court determined that the passenger compartment of the truck was not within Savedra's immediate control at the time of the arrest, and therefore, suppressed the cocaine. We hold that, because Savedra had exited the truck immediately prior to contact with the police officer and indirect police contact had occurred before Savedra left the truck, the police officer was entitled to search the truck under *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Therefore, we reverse the trial court's order of suppression and remand the case for trial.

I.

Officer William Thomas was looking for a suspect by the name of Joe Chavez, who was wanted on several outstanding warrants. He had a general description of Chavez and the address of the apartment complex where Chavez lived. As he entered the parking lot of the apartment complex on April 3, 1995, he noticed two men seated in a truck that was backed into a parking space. The two men exited the truck immediately upon the officer's entry into the parking lot. The officer pulled up slightly in front of and perpendicular to the truck and stopped. The officer made contact with the two men in the area in front of the truck, and because one of the men resembled the description of Joe Chavez, he asked them for identification. Both men gave him Colorado identification cards. Neither identification card identified its holder as Joe Chavez. However, because the officer's experience indicated that people who use identification cards often do not have a driver's license, the officer asked the driver of the truck if his license was under suspension. The driver, Barney Savedra, responded that his license was under a restriction and that he had no insurance. The officer then took both identification cards back to his patrol car and checked both names through the computer. He learned that there was an outstanding traffic warrant for the arrest of Savedra, and that Savedra's license had been revoked. He returned to where the two men were standing and arrested Savedra for traffic offenses. The passage of time from the point at which the officer pulled into the parking lot to the time of the arrest was approximately five minutes.

Savedra was handcuffed and placed in the back seat of the patrol car. Savedra told the officer that he had recently completed a prison sentence for a felony conviction. He also requested permission from the officer to ask his companion to call his wife so that she could take care of the truck, particularly some auto parts in it that concerned him.

Officer Thomas allowed the passenger to approach Savedra to discuss arrangements for the truck.

While Savedra and the passenger were talking, Officer Thomas walked over to the truck to "do a quick search of the truck incident to arrest." He looked under the driver's seat of the truck where Savedra had been sitting and located a zip lock plastic baggie containing nine smaller baggies with a white powder substance in them. The white powder eventually tested positive for cocaine.

Savedra was charged with Possession of a Schedule II Controlled Substance with Intent to Sell in violation of § 18–18–405, 8B C.R.S. (1995 Supp.), a class 3 felony. He was also charged with Driving after Judgment Prohibited and various traffic offenses that were later dismissed.

Savedra moved to suppress statements made and evidence seized at the scene of the arrest on three grounds: (i) that the stop was unconstitutional; (ii) that his statements were made in response to custodial interrogation without advisement of rights; and (iii) that the search of the truck was not within any exception to the warrant requirement. The trial court denied the motions on the first two grounds, but granted the motion to suppress the cocaine on the basis that the search was undertaken without a warrant and did not fall within the *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), exception to the warrant requirement because the officer did not initiate contact with Savedra while he was still in the truck. The people appealed the trial court's suppression order to this court under C.A.R. 4.1 and we now reverse.

## II.

■ The Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado Constitution proscribe unreasonable searches and seizures by state officials. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *People v. Brewer*, 690

P.2d 860, 862 (Colo.1984). Thus, warrantless searches are per se unreasonable unless they fall under a specifically established and well delineated exception. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *People v. McMillon*, 892 P.2d 879, 882 (Colo.1995). One such exception is that a police officer may search the area within the immediate control of an arrestee. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *People v. Hufnagel*, 745 P.2d 242, 245, 247 (Colo.1987). In *New York v. Belton*, 453 U.S. at 460, 101 S.Ct. at 2864, the Supreme Court established a related exception to the warrant requirement. It held that when the police make a lawful custodial arrest of the occupant of an automobile, the police may conduct a contemporaneous search of the passenger compartment of that automobile. Colorado has adopted the warrant exception articulated in *Belton*. *See People v. Aguilar*, 897 P.2d 84, 86 (Colo. 1995); and *McMillon*, 892 P.2d at 884–85.

■ The *Belton* standard was developed in response to the need for a workable, straightforward rule that police could apply in searching an automobile passenger compartment after making a custodial arrest of an occupant or recent occupant of that automobile. *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864. In setting out the rule, the Court noted that the police were confused about what parts of the automobile were in the actual reach of an arrestee under the *Chimel* standard. *Belton* created a "bright line rule" defining the passenger compartment of an automobile as being within the hypothetical immediate control of an occupant or recent occupant of the vehicle. *Id.*[1]

■ *Belton* applies only when there has been a lawful custodial arrest of the occupant of a vehicle. 3 Wayne R. LaFave, *Search and Seizure* § 7.1(b), at 5 (2d ed. 1987). Therefore, the inquiry mandated by *Belton* is twofold: (i) whether there has been a lawful

---

1. The passenger compartment is within the *Belton* zone even where the arrestee is away from the vehicle and safely within police custody at the time of the search. *See, e.g., United States v.*

*Patterson*, 993 F.2d 121 (6th Cir.1993); *United States v. Karlin*, 852 F.2d 968 (7th Cir.1988); *U.S. v. McCrady*, 774 F.2d 868 (8th Cir.1985); *U.S. v. Cotton*, 751 F.2d 1146 (10th Cir.1985).

custodial arrest; and (ii) whether the person arrested was the occupant of the vehicle.

■ In this case, there is no argument about the defendant's lawful arrest on an outstanding warrant. Hence, here, as in many other cases dealing with these issues, we must turn our analysis to whether Savedra was an occupant of the vehicle for purposes of the *Belton* test.

Neither party argues that the person must actually be inside the vehicle at the time of the arrest. In *Belton* itself, the defendant was not inside the car at the time of the arrest, but instead had been directed to exit the car shortly before being arrested. *Belton*, 453 U.S. at 456, 101 S.Ct. at 2862. Thus, *Belton* clearly applies to the many situations in which the police, for a variety of reasons, ask the suspects to exit the car before arresting them. In fact the *Belton* court used both the terms "occupants" and "recent occupant" in explaining its holding. *Id.* at 460, 101 S.Ct. at 2864. Instead, the issue here is the scope of the terms "occupant" and "recent occupant"; specifically, whether the *Belton* rule applies when the arrestee has exited the car immediately before physical contact with police is made.

Savedra argues that *Belton* is limited to those instances where the police actually order the defendant out of the vehicle. We do not agree. Instead, we find that *Belton* can include situations where the occupant of a vehicle anticipates police contact and exits the vehicle immediately before that contact occurs. In reaching this conclusion we do not hold that *Belton* insulates from inquiry every search incident to a custodial arrest of a recent occupant of a vehicle, but only that under the facts presented in this case, the warrantless search was legal.

## A.

The issue of temporal proximity between the police encounter and the defendant's presence in the vehicle is the main factor courts consider in determining whether a person is a recent occupant of a vehicle for purposes of *Belton*. Where the defendant has been outside of the car for a substantial period of time, many courts have found that a search of the vehicle under *Belton* is no longer valid. *See, e.g., Gauldin v. State,* 683 S.W.2d 411, 414 (Tex.Crim.App.1984) (holding *Belton* inapplicable because defendant was not recent occupant of truck where defendant had parked truck and was sitting inside restaurant at bar when confronted by police); *State v. Vanderhorst,* 419 So.2d 762, 764 (Fla.Dist.Ct.App.1982) (finding defendant no longer a recent occupant where he had left car, walked three miles home, requested a ride back to the car and was attempting to rescue the car when police arrived). However, courts have found a person to be a recent occupant where police come upon the scene immediately after the suspect has left the car. *See United States v. Arango,* 879 F.2d 1501, 1506 (7th Cir.1989) (finding search of vehicle valid where defendant had left car moments before confrontation with police began), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990); *United States v. Schecter,* 717 F.2d 864, 868 (3d Cir.1983) (applying *Belton* where police contacted defendant stumbling outside his car under the influence of drugs shortly after he had driven it into a fence); *People v. Stoffle,* 1 Cal. App.4th 1671, 3 Cal.Rptr.2d 257, 261 (1991) (holding *Belton* applicable where police contacted and arrested defendant at the rear of vehicle a brief time after he was last inside it).

In this case, Savedra was clearly a recent occupant of the truck. He and his passenger exited the truck when the police officer drove into the parking lot. Savedra knew that his license was under revocation, and may also have known that there was a traffic warrant for his arrest. It is not unreasonable to assume that he exited the vehicle to avoid contact with the police officer. Nonetheless, the officer immediately made contact with the two men and placed Savedra under lawful custodial arrest within a period of five minutes.

## B.

The bases upon which *Chimel* and *Belton* validate searches incident to arrest are twofold: to reasonably assume the safety of the arresting officer, since suspects may act unexpectedly and violently when threatened

with arrest, and the preservation of easily concealed or destructible evidence. *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040; *Belton,* 453 U.S. at 457, 101 S.Ct. at 2862–63. Both of these justifications support the police officer's search of Savedra's truck. ·

During the police encounter there was a close spatial proximity between Savedra and his truck. Savedra and his passenger were stopped by the officer in the immediate vicinity of their truck; they were at the front of the truck when the police car drove up to them. More importantly, the two men were in the truck when they first saw the police officer approach. Prior to police contact, one of the occupants could have chosen to hide something in the vehicle to avoid discovery by the police. If *Belton* were read to preclude a search in this situation where police contact occurred just after the suspect exited his vehicle, then knowledgeable suspects could effectively conceal evidence by stepping outside of their vehicle whenever they saw a police officer approaching.

> In order to conduct a valid search, police officers should not have to race from their vehicles to the arrestee's vehicle to prevent the arrestee from getting out of his or her vehicle. If this were the rule, the quick and the speedy suspect could always create a sanctuary for weapons or contraband by getting out of the vehicle and surrendering to the officer first.

*State v. Gonzalez,* 1 Neb.App. 47, 487 N.W.2d 567, 572 (1992).

Additionally, specific facts in this case suggest that Savedra had material in the truck he wanted to hide. Savedra specifically voiced his concern to the police officer after arrest about certain "auto parts" in the truck that he needed his wife to retrieve. The officer knew that Savedra had an outstanding warrant for his arrest, was driving with a revoked license, and had recently completed a sentence on a felony conviction. The offi-

cer was outnumbered by the two men as well.[2] Given that Savedra's passenger remained at liberty and Savedra's wife also had access to the truck, the police officer had reason to be concerned that the passenger might retrieve a weapon from the vehicle or that either could destroy or remove potential evidence in the truck.

### C.

Savedra also argues that the search was invalid because there could be no evidence in the truck relevant or related to the traffic violation warrant for his arrest. We do not agree that there needs to be any substantive nexus between the reason for the arrest and the evidence uncovered. To the contrary, the relationship between any evidence seized and the reason for Savedra's arrest is of no import under *Belton. See, e.g., United States v. Pino,* 855 F.2d 357, 363–64 (6th Cir.1988) (upholding search of item in car revealing cocaine where defendant arrested for minor traffic violations); *United States v. Harris,* 617 A.2d 189, 192–93 (D.C.App.1992) (holding search of vehicle revealing an unregistered firearm and ammunition valid under *Belton* where the driver failed to obey traffic signal, was stopped and arrested for driving without a license).

### III.

Defendant cites *United States v. Strahan,* 984 F.2d 155 (6th Cir.1993), and *United States v. Fafowora,* 865 F.2d 360 (D.C.Cir.), *cert. denied,* 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989), in support of his argument that *Chimel* instead of *Belton* should apply to a case such as this where the police officer did not physically approach the defendant until after he had exited the vehicle.

There are some factors that distinguish both cases from the one with which we are presented today;[3] however, the real differ-

---

**2.** Numerous courts have held protective searches reasonable where the suspects outnumber the police. *See, e.g., Commonwealth v. Brillante,* 399 Mass. 152, 155, 503 N.E.2d 459, 462–63 (1987) (upholding search of car for weapons or evidence where two police officers faced three suspects).

**3.** In *Strahan,* the police officers outnumbered the lone suspect. Also, the court found that "Strahan was a good distance [30 feet] away from the automobile when confronted and arrested by the officers." Under these facts, the suspect was not in control of the vehicle and therefore a *Belton* search was precluded. *Strahan,* 984 F.2d at 159. Similarly, in *Fafowora* the suspects did not out-

ence lies in the way in which we analyze the dispositive aspects of *Belton*.

The justification for both the *Chimel* and *Belton* rules is clarification of the rights and responsibilities of police officers when faced with an evolving confrontation resulting in arrest. The warrant exceptions created by *Chimel* and *Belton* are designed to permit police officers to protect themselves from harm, and to avoid the destruction of evidence.

Given that reasoning, it is illogical to distinguish between someone who is ordered out of a vehicle by a police officer and someone else who exits the vehicle anticipating or trying to avoid imminent police contact. In both situations suspects are equally capable of concealing evidence or weapons in the vehicle and may be equally motivated to do so.

The indirect contact between Savedra and the police officer occurred when the officer entered the parking lot. That is the point at which Savedra left his vehicle, and it is reasonable to conclude that he did so either to avoid police contact or to divert the location of the contact away from the truck.

Therefore, under the circumstances presented in this case, we find *Belton* to be dispositive. We conclude that the search of the truck was permissible as an incident to the lawful custodial arrest of Savedra because Savedra was a recent occupant of a vehicle who exited that vehicle at a time when he anticipated possible imminent police contact.

## IV.

For the foregoing reasons, we reverse the trial court's suppression of the cocaine evidence and remand this case for trial.

number the government agents. The suspects had parked their jeep and were walking away and were approximately one car length away at the point of encounter with the agents. The court found that neither of the defendant occupants (both of whom were placed under arrest) could have reached the passenger compartment of the jeep at this point and that therefore *Belton* could not apply. *Fafowora,* 865 F.2d at 362.