**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Keith WALKER, Defendant–Appellant.**

**No. 97–6442.**

United States Court of Appeals,
Sixth Circuit.

Submitted June 1, 1999.

Decided and Filed June 22, 1999.

Brian J. Quarles, Asst. U.S. Atty., (briefed), Office of U.S. Atty., Memphis, TN, for Plaintiff–Appellee.

William C. Anderson, Jr. (briefed), Memphis, TN, for Defendant–Appellant; Keith Walker, Leavenworth, KS, pro se.

Before: KEITH, CONTIE, and SUHRHEINRICH, Circuit Judges.

## OPINION

CONTIE, Circuit Judge.

Keith Walker appeals the district court's decision denying his motion to suppress and his status as a career offender under the United States Sentencing Guidelines. We affirm the district court's determinations for the following reasons.

### I.

On August 1, 1995, officers with the Memphis Police Department Narcotics Unit executed a search warrant at 419' Sullivan Street in Memphis, Tennessee. In an effort to secure the area to be searched and to protect themselves, the officers patted-down each and every individual, including defendant-appellant Keith Walker ("Walker"), that was inside the house.

When Officer William Green ("Officer Green") patted-down Walker, Officer Green noticed a bulge in Walker's pants. At the time of the search, Officer Green had six years of experience as a narcotics officer and was well aware that illegal drugs (including cocaine and crack cocaine) were often stored in plastic bags and hidden by drug traffickers underneath their clothing. Accordingly, when Officer Green noticed the bulge in Walker's pants, "Officer Green immediately recognized the bulge underneath defendant's pants as a controlled substance." Appellee's Brief at 5. Another police officer pulled Walker's pants down and recovered a plastic bag containing approximately 40 rocks of crack

cocaine hidden between Walker's buttocks.[1]

On August 2, 1995, police officers went to Walker's residence at 4542 Whitewood Cove in Memphis, Tennessee. When the officers arrived at Walker's residence, Walker's father, James Walker, allowed the officers to search his home. When the officers searched the appellant's bedroom they found seven bags of crack cocaine,[2] a scale commonly used to weigh drugs, $4,000 in cash, and mail addressed to the appellant. On August 3, 1995, Walker told the police officers that they did not need to search any further because they had found and seized all of his crack cocaine.

On August 29, 1995, a federal grand jury returned a one-count indictment charging Walker with possessing with the intent to distribute approximately 189 grams of crack cocaine (cocaine base) in violation of 21 U.S.C. § 841(a)(1). On December 19, 1995, Walker filed a motion in district court seeking to suppress the "illegally obtained evidence." Specifically, Walker asked the court "to suppress any and all evidence seized on August 1, 1995, as a result of the illegal stop, search and seizure of the Defendant and the subsequent illegal search of the residence of the Defendant." Walker's Motion to Suppress Illegally Obtained Evidence at 1.

The district court entertained Walker's motion to suppress on April 11, 1996, and denied the motion on April 17, 1996. On April 24, 1996, the grand jury returned a two-count superseding indictment charging Walker with: possessing with intent to distribute approximately 5 grams of cocaine base on or about August 1, 1995, in violation of 21 U.S.C. § 841(a)(1) (Count One); and possessing with intent to distribute approximately 155 grams of cocaine base on or about August 1, 1995, in violation of 21 U.S.C. § 841(a)(1) (Count Two).

On May 8, 1996, Walker pled not guilty to the charges in the two-count superseding indictment.

Walker's jury trial began on June 2, 1997, and, on June 5, 1997, the jury found Walker guilty of the charges in the superseding indictment. On October 29, 1997, the district court sentenced Walker to concurrent 36–year terms of imprisonment,[3] to be followed by concurrent five-year terms of supervised release. Walker filed his timely notice of appeal on November 7, 1997.

## II.

### Standards of Review

■ The district court denied Walker's motion to suppress the crack cocaine found hidden in his buttocks during the pat-down search of the people at 419 Sullivan Street in Memphis, Tennessee, during the execution of a search warrant. When reviewing the denial of a motion to suppress, we review a district court's factual findings for clear error, United States v. Smith, 73 F.3d 1414, 1416 (6th Cir.1996), and we review the district court's conclusions of law de novo. Id. Moreover, the evidence must be viewed in the light most favorable to the government. Id.

■ The district court held that Walker was a career offender under U.S.S.G. § 4B1.1 because his Tennessee conviction for solicitation to commit aggravated robbery was a predicate offense under section 4B1.1. "Whether a conviction for a particular type of crime qualifies as a predicate offense presents a purely legal question, sparking de novo review." United States v. Winter, 22 F.3d 15, 18 (1st Cir.1994).

### Summary of the Parties' Arguments

On appeal, Walker asserts that the district court should have suppressed the

---

1. The estimated street value of the crack cocaine was approximately $800.

2. The estimated street value of the crack cocaine recovered from Walker's bedroom was approximately $14,000.

3. The district court determined that Walker's sentencing guideline range (at offense level 37 and criminal history category VI) was 360 months to life in prison.

crack cocaine that was seized from him on August 1, 1995, during the execution of a search warrant at 419 Sullivan Street in Memphis:

The court below should have suppressed drugs which were seized as a result of a frisk for weapons. The frisking officer felt an object which he knew was not a weapon but thought might be drugs. It was, however, necessary to pull the defendant-appellant's pants down to uncover the object in order to ascertain that it was indeed drugs. This constituted a further search outside the scope of the frisk for weapons and for which no probable cause existed.

Appellant's Brief at 5.

In response, the United States asserts that law enforcement officers have probable cause to search for drugs when a frisk for weapons reveals an object on an individual that the officers know to be a controlled substance:

Officer Green performed a lawful pat-down of Mr. Walker. Where officers, while performing a permissible pat-down for weapons, feel something that their experience tells them is narcotics, the pat-down gives them probable cause to search the suspect for drugs. If a police officer pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity as contraband immediately apparent, then the seizure of such an item whose identity is already known occasions no further invasion of privacy.

At the time of the search, Officer Green had six years of experience as a narcotics officer. During Officer Green's six years as a narcotics officer, he had come across cocaine or crack that had been packaged in a plastic-type substance on many occasions. When Officer Green patted down the defendant, he checked Mr. Walker's groin and buttocks area at which time Officer Green immediately recognized the bulge underneath defendant's pants as a controlled substance.

[T]he fact that the pat-down revealed narcotics rather than a weapon did not make the frisk impermissible. If the frisk for a weapon is conducted in compliance with proper standards and results in recognition of the likely presence of narcotics, it is immaterial that what was discovered is not the article for which the police officers were originally and specifically looking.

Appellee's Brief at 8–9.

In his second assignment of error, Walker asserts that his state court conviction for solicitation to commit aggravated robbery does not constitute a predicate offense for career offender status under U.S.S.G. § 4B1.1:

The court below wrongly concluded that a conviction for solicitation to commit a violent offense constituted a predicate offense for career offender purposes. This decision is directly in conflict with controlling Sixth Circuit precedent which holds that a conviction for solicitation does not constitute a predicate offense for career offender purposes.

Appellant's Brief at 5.

In response, the United States asserts that Walker's conviction for solicitation to commit aggravated robbery is a "crime of violence" under section 4B1.1 because the crime presented a serious risk of physical injury to others:

Mr. Walker's conviction for Solicitation to Commit Aggravated Robbery is properly classified under 4B1.1 as a "crime of violence" because his conduct presented a serious potential risk of physical injury to another. ... In fact, the crimes of robbery and aggravated assault are specifically listed in the guidelines. *See* U.S.S.G. § 4B1.2, comment. (n.1).

Appellee's Brief at 7.

### Walker's Motion to Suppress

■ On appeal, Walker asserts that the district court improperly denied his motion to suppress the drugs that were found in his possession during the pat-down search

because the police officers exceeded their lawful authority by pulling down his pants to search for drugs after concluding that he did not possess a weapon.

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that police may conduct certain investigative searches "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" so long as the officer can "point to specific and articulable facts" arousing reasonable suspicion of criminal activity. *Id.* at 21–22, 88 S.Ct. 1868. "Even if each specific fact relied upon by the authorities to make a *Terry* stop would not be a basis for suspicion when considered in isolation, the reasonable suspicion necessary to support an investigatory stop can still be found when it is 'based upon an assessment of *all* circumstances surrounding the actions of a suspected wrongdoer,' including those facts that would arouse suspicion only in someone experienced in law enforcement matters." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993) (emphasis in original) (citation omitted).

■ During a *Terry* stop, a police officer may conduct a limited search for concealed weapons, if the officer believes that a suspect may be dangerous. *United States v. Strahan*, 984 F.2d 155, 158 (6th Cir.1993). *See also Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to

pursue his investigation without fear of violence."). Because the search must "be strictly circumscribed by the exigencies which justify its initiation," *United States v. Strahan*, 984 F.2d at 158, the search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer." *Id.* (citation omitted). *See generally Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. 1868 ("[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *United States v. Carthorn*, 35 F.3d 567 (6th Cir.1994) (unpublished) (citing *Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).[4]

In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court held that police may seize non-threatening contraband detected by touch during a protective patdown search if the search stays within the bounds marked by *Terry*:

> The question presented today is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by *Terry*. We think the answer is clearly that they may, so long as the officers' search stays within the bounds marked by *Terry*.
>
> .    .    .    .    .    .
>
> Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating

---

4. In *United States v. Carthorn*, 1994 WL 487336 this court held: "Officer Alexander's search of the passenger compartment of the automobile was limited to those areas in which a weapon could be found, and although Officer Alexander found contraband other than weapons, namely, crack cocaine and marijuana, during the course of his protective search for weapons, the Fourth Amendment does not require suppression of this evidence."

character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.,* if "its incriminating character is not 'immediately apparent,'"—the plain-view doctrine cannot justify its seizure.

We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. ...*Terry* itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of *Terry,* after all, is that officers will be able to detect the presence of weapons through the sense of touch and *Terry* upheld precisely such a seizure.... Regardless of whether the officer detects the contraband by sight or by touch, ... the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. The [Minnesota Supreme Court's] second concern—that touch is more intrusive into privacy than is sight—is inapposite in light of the fact that the intrusion the court fears has already been authorized by the lawful search for weapons. The seizure of an item whose identity is already known occasions no further invasion of privacy. Accordingly, the suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch.

*Id.* at 373–77, 113 S.Ct. 2130 (citations and footnotes omitted).

Though Walker asserts that the crack cocaine found hidden in his buttocks should have been suppressed because the police officers exceeded their right to pat-down the outer layers of his clothing to search for weapons, Walker's assertion must be rejected because the seizure of the plastic bag from Walker's buttocks was justified by Officer Green's experience as a narcotics officer and his immediate recognition that the plastic bag hidden on Walker's body contained crack cocaine. Indeed, at the time of the search, Officer Green had six years of experience as a narcotics officer, and he had come across illegal substances in plastic bags on many occasions. Accordingly, when Officer Green felt the bulge underneath Walker's pants during his search of Walker's groin and buttocks, Officer Green immediately identified the purpose of the plastic bag that he felt.

Pursuant to the Supreme Court's decision in *Minnesota v. Dickerson,* Officer

Green's discovery of the crack cocaine hidden in Walker's buttocks is admissible evidence because its identity was immediately apparent to Officer Green, and Walker presented no evidence that the police officers' actions were more intrusive than allowed by the Supreme Court's decision in *Terry v. Ohio*. Because the district court properly denied Walker's motion to suppress the evidence ˙ seized by the police officers during their initial search, Walker's first assignment of error must be rejected.

### Walker's Career Offender Status Under U.S.S.G. § 4B1.1

Pursuant to U.S.S.G. § 4B1.1, a defendant "is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id.* "A career offender's criminal history category in every case shall be Category VI." *Id.* The terms "crime of violence," "controlled substance offense," and "two prior felony convictions" are defined in U.S.S.G. § 4B1.2, which provides (in relevant part):

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). "Because we employ a categorical approach, a determination as to whether an offense constitutes a 'crime of violence' is based on the statutory defi-

nition of the crime." *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir.1995) (citation omitted). Accordingly, the "specific, underlying facts regarding the offense [are] irrelevant to a sentencing court's determination." *Id.* (citations omitted).

The Commentary following section 4B1.2 provides:

> "Crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2, comment. (n.1).

In this action, the district court found that Walker's Tennessee conviction for solicitation to commit aggravated robbery was a predicate offense under section 4B1.1 because Walker's conduct presented a serious potential risk of physical injury to another. We agree with the district court's finding.

In *United States v. Dolt*, 27 F.3d 235 (6th Cir.1994), this court held that the defendant's prior conviction under Florida law for solicitation to traffic in cocaine did not constitute a controlled substance offense because solicitation was not enumerated as a predicate offense in the Sentencing Guidelines, and Florida's solicitation statute is not sufficiently similar to the

offenses listed in Application Note 1 to section 4B1.2.[5]

Walker was convicted under the Tennessee Solicitation Statute which provides (in relevant part): "Whoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation." Tenn.Code § 39–12–102. Though Walker does not dispute the district court's finding that aggravated robbery is a "crime of violence" for purposes of section 4B1.1, Walker asserts that *solicitation* to commit aggravated robbery is not a crime of violence. We disagree.

Pursuant to Tenn.Code § 39–12–102, the crime of solicitation to commit aggravated robbery describes an offense that inherently involves conduct that presents a serious potential risk of injury to another which meets the Sentencing Guidelines' definition of a "crime of violence" under U.S.S.G. § 4B1.2, comment. (n.1). Tennessee's solicitation statute necessitates conduct that, by definition, presents a serious potential risk of physical injury to another when the solicited crime is aggravated robbery. Indeed, Tennessee's aggravated robbery statute provides: "Aggravated robbery is robbery as defined in § 39–13–401:(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or (2) Where the victim suffers serious bodily injury." Tenn.Code § 39–13–402. Because the district court properly concluded as a matter of law that solicitation to commit aggravated robbery under Tennessee law is a "crime of violence" for purposes of career offender status under U.S.S.G.

§ 4B1.1, we reject Walker's second assignment of error.

Accordingly, we **AFFIRM** the district court for the aforementioned reasons.

---

5. In *United States v. Fujinaka,* 91 F.3d 156 (9th Cir.1996) (unpublished), and *United States v. Cox,* 74 F.3d 189 (9th Cir.1996), the Ninth Circuit held that solicitation of murder (under Texas and California law) is a crime of violence for purposes of section 4B1.2.