490 So.2d 1308 (1986)
STATE of Florida, Appellant,
v.
Ronald E. McLENDON, Appellee.
No. BJ-331.
District Court of Appeal of Florida, First District.
June 24, 1986.
Rehearing Denied July 18, 1986.
Jim Smith, Atty. Gen., and Norma J. Mungenast, Asst. Atty. Gen., Tallahassee, for appellant.
Thomas W. Kurrus, Larry G. Turner, and Robert S. Griscti, of Turner, Kurrus & Griscti, P.A., Gainesville, for appellee.
PER CURIAM.
This is an interlocutory appeal by the State of an order of the trial court which granted defendant McLendon's motion to suppress certain items seized without a warrant from his truck following his arrest in Arkansas.
The facts involved do not appear to be in dispute. Appellee was indicted in June, 1985, in Suwannee County, and charged with first-degree murder, shooting into an occupied building, displaying a firearm during a felony, and carrying a concealed weapon.
On June 9, 1985, Lt. James Presley of the West Memphis, Arkansas Police Department was notified through a National Crime Information Center computer that a homicide suspect would possibly be in his area. At about 9:00 a.m. on that day, he was directly contacted by the Suwannee County Sheriff's Office and given appellee's name, his physical description, a description of appellee's vehicle, which was a Ford pickup truck that had the letters "F-O-R-D" painted in bright red on the tailgate, and bearing either a Florida license tag number ALK-192 or an Illinois license tag number HKB-295. He was also given a particular telephone number of a telephone booth located at Jones Exxon Service Station in West Memphis and was told that, at 12:00 noon of that day, appellee was expected to be at that location. He was also given a brief summary of the crimes appellee was believed to have committed, including the fact that he had shot a female five or six times with what Florida investigators believed to be a .25 caliber automatic pistol with a certain serial number.
Responding to this information, Lt. Presley made preparations to apprehend appellee. He ordered all patrol units to stay away from the Jones Exxon Station area. He obtained a farm truck for his use and changed into old hunting fatigues. Shortly before noon, Lt. Presley proceeded to the *1309 service station area and directed two back-up and surveillance units to the area close by. While Lt. Presley was around a corner from the service station, he was alerted by one of the back-up units of a beige pickup truck in the area, which Lt. Presley soon spotted heading down the service road toward the service station. He noted the bright red letters "F-O-R-D" on the truck's tailgate, and he proceeded to drive in behind the truck but intentionally kept some distance between the two vehicles. The pickup truck turned into Jones Exxon Station, passed the pumps, and parked in a parking spot on the right-hand or west side of the building, about 20 to 30 feet from the front entrance. Lt. Presley pulled around in the same direction and parked to the rear of the pumps in a position where appellee would have to be careful not to hit the back of Lt. Presley's truck if he backed up. He then notified his units that the license plate number matched that given by the Florida authorities. Lt. Presley did not actually see appellee get out of the truck but did see him enter the service station and walk toward the pay telephone inside. After parking his truck, Lt. Presley went inside, took out his wallet, and as he put it, "messed around a few minutes." Appellee was standing near the pay phone, which was located near the curb in back of the restrooms. Appellee returned to the front of the building. As soon as a lady and two children moved far enough away to ensure the officer of their safety, he took out his service weapon and called appellee's last name, at which time appellee "froze or stiffened up." Lt. Presley then identified himself and, after removing four other persons from the building with the aid of officers arriving in marked patrol cars, arrested appellee, handcuffed him, patted him down for weapons, and advised him of his rights. No weapon was found on appellee. The arrest took place 20 to 30 feet from the door of appellee's truck and about three minutes after he had been in the service station. Subsequently, appellee was carried outside the building and placed between his truck and that which Lt. Presley had used. Lt. Presley walked over to appellee's truck and observed a box of .25 caliber shells placed on a shirt up against the front seat toward the passenger side. Upon opening the door of the truck, he observed some letters on the seat. Upon lifting the shirt, he discovered a .25 caliber automatic gun, with one round in the chamber and with a serial number corresponding to that previously given Lt. Presley. An Illinois license plate with number HKB-295 was found behind the seat. These items were removed from the truck, and subsequently the truck was removed from the service station by a wrecking service. Appellee was placed in a patrol car and transported to the city jail.
A motion to suppress was filed challenging the reasonableness of the search and seeking to suppress all the evidence seized from McLendon's truck. At the motion hearing, the State argued the warrantless search to be incident to a lawful arrest and in conformity with the Arkansas Rules of Criminal Procedure and the United States constitutional standards regarding searches and seizures. The defendant argued that the scope of the search was extended improperly to McLendon's vehicle because he was not apprehended in the vehicle by police but was arrested 20 to 30 feet away, inside a service station. Defendant's counsel conceded that, had the defendant been lawfully stopped and removed from the vehicle by police officers, then the search of McLendon's vehicle would have been a search incident to a lawful arrest, permitted under authority of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). We find this distinction dubious and reverse.
In Belton, supra, the Supreme Court set forth a "straightforward, workable rule" providing that the scope of a search incident to arrest includes the interior passenger compartment of an automobile and the articles found therein where the arrestee was a recent occupant. The importance of the Belton decision is that the Supreme Court supplied police officers *1310 with a workable definition of the "area within the immediate control of the arrestee,"[1] eliminating the need for case-by-case determinations as to whether the interior of an automobile is within the scope of a search incident to a lawful arrest. To distinguish between arrests of persons in the car from arrests of persons recently vacating the car serves to severely diminish the purpose of the Belton decision. Once again, case-by-case determinations would be required, this time with regard to whether an arrestee was a recent occupant.[2] We decline to define the time parameters of a "recent occupant" for the purpose of rendering the "search-incident-to-arrest" exception applicable or inapplicable. We do find, however, under the circumstances presented  where mere minutes lapsed between the driver's exit from his vehicle and his arrest, affording no opportunity for intervention and tampering with the evidence  that the warrantless search was pursuant to a lawful arrest based on probable cause that the arrestee committed a murder in Florida and the scope of the search was permissible, in that evidence of the crime was sought from an automobile.[3]
Therefore, we vacate the trial court's order of suppression and remand this cause for further proceedings.
ERVIN and THOMPSON, JJ., and BEN C. WILLIS (Ret.), Associate Judge, concur.
NOTES
[1] In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court held that a lawful custodial arrest creates a situation which justifies a contemporaneous search without a warrant of the person arrested and the area within the immediate control of the arrestee.
[2] This court, in State v. Vanderhorst, 419 So.2d 762 (Fla. 1st DCA 1982), held that the driver of a vehicle who had vacated his vehicle for approximately two and one-half hours before being apprehended and taken into custody was not a recent occupant of the vehicle, and the warrantless search of his vehicle was not permitted as incident to arrest. Clearly, the facts of Vanderhorst warrant consideration of the time frame within which the arrestee was an occupant of his vehicle and the ensuing arrest. The instant case presents a dissimilar scenario.
[3] This is an application of the "automobile exception" fashioned by the United States Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925). Although the State did not raise the automobile exception below to justify its warrantless search, the facts of the instant case are such that the "search-incident-to-arrest exception" necessarily involved consideration of the automobile exception. It is our view that it was incumbent upon the trial court to consider the reasonableness of the search under this exception, even though it was not expressly raised.