Troy R. LEWIS, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–304.

District of Columbia Court of Appeals.

Argued Feb. 5, 1993.
Decided Oct. 7, 1993.
As Amended Dec. 9, 1993.

Walter S. Booth, Bethesda, MD, appointed by this court, for appellant.

Jolie F. Zimmerman, Law Student, argued for appellee. Jay B. Stephens, U.S. Atty., at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

James Klein and Eli Gottesdiener, Washington, DC, filed a brief, for amicus curiae, Public Defender Service.[1]

Before TERRY, SCHWELB, and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

This case raises an issue of first impression for this court. Specifically, we are asked to decide whether a warrantless search of the locked glove compartment in an automobile, which appellant had parked, exited, locked, and walked away from *before* a police officer initiated contact with him fifteen to twenty feet away, was a constitutionally valid search incident to his arrest for the misdemeanor offense of driving without a license.[2]

The trial court denied appellant's motion to suppress the 100 ziplock bags of heroin seized from the glove compartment. Subsequently, appellant was tried and convicted of one count of possession with intent to distribute heroin in violation of D.C.Code § 33–541(a)(1) (1988). Appellant now challenges the denial of his motions to suppress evidence and for judgment of acquittal. We hold that the warrantless search of the automobile in this case was constitutionally invalid. Accordingly, we reverse appellant's conviction for possession with intent to distribute heroin and remand the case to the trial court for further proceedings in accordance with this opinion.[3]

## I.

The facts pertinent to our review are limited to those set forth in the findings of the trial court as follows:

> The Court finds that Officer Christian, who was alone, saw the defendant ... [operate and park] ... a car that had no front license tag. Officer Christian approached that car and the defendant got out of the car.

Apparently the defendant and Officer Christian met about fifteen to twenty feet from the car, and at that time Officer Christian asked the defendant about the front tag and if [he] had a driver's license. The defendant said that he had no license and started to flee. He was stopped rather quickly by Officer Christian and then placed under arrest.

\* \* \* \* \* \*

The Court finds also that after the arrest, Officer Christian asked the defendant who owned the car. The defendant replied that his uncle, Kevin Lewis, actually owned the car. This all happened, from the testimony, about fifteen to twenty feet away from the car. The car, at that time, was locked.

The officer called for a transport vehicle. While waiting [for ten to fifteen minutes] with the defendant for the transport, about ten people who the officer indicated were people know[n] to him or he suspect[ed] were users of drugs, told Officer Christian that they wanted to get the keys to the car.

---

1. *Subsequent to oral argument, the Public Defender Service was appointed as amicus curiae. We thank the Public Defender Service for its submission.*

2. "It is a [fundamental] principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so. [The Supreme Court] has recognized, however, that 'the exigencies of the situation' may sometimes make exemption from the warrant requirement 'imperative.'" *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981) (citation omitted).

3. Although the unlawfully seized drugs may not be admitted at any retrial, we conclude that, including the evidence wrongfully admitted at trial, there was enough *total* evidence to withstand a motion for judgment of acquittal in the trial court. *See Thomas v. United States,* 557 A.2d 599, 601 (D.C.1989) (en banc) (per curiam). Thus, as to this issue, there are no constitutional impediments to a retrial. *See Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

He wondered why and could have concluded that they thought the drugs were in the car. Also, Officer Christian said in the grand jury that he was suspicious of the car due to a prior incident that had happened I think about a week or so before with the defendant.

The transport vehicle arrived, and at that time Officer Christian searched the car. He went into the locked glove compartment and unlocked it, I presume, and found one hundred bags of heroin. He used the key that he got from the defendant to unlock the car and presumably to unlock the glove compartment itself.

The Court finds, based on all of these facts and under the applicable law, that the search conducted by Officer Christian was valid....

Since neither party contests the facts, or any part of them, as "clearly erroneous," *see Davis v. United States,* 564 A.2d 31, 35 (D.C. 1989) (en banc) (quoting D.C.Code § 17–305(a) (1981)), we review the trial court's findings deferentially. *See Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc). Our review of the court's legal conclusions in granting or denying a motion to suppress evidence, however, is *de novo. See Gomez v. United States,* 597 A.2d 884, 889 (D.C.1991); *Cauthen v. United States,* 592 A.2d 1021, 1022 (D.C.1991); *Brown v. United States,* 590 A.2d 1008, 1020 (D.C.1991). "Essentially, our role is to ensure that the trial court had a substantial basis for concluding that no constitutional violation occurred." *Brown,* 590 A.2d at 1020. On the record here, we cannot sustain the trial court's holding that no constitutional violation occurred.

## II.

In deciding the primary issue in this case, we look first for guidance to *Belton,* 453 U.S. 454, 101 S.Ct. 2860, see note 2, *supra,* upon which the government principally relies in urging affirmance of the trial court's order denying the motion to suppress. In *Belton,* the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," *id.* at 460, 101 S.Ct. at 2864 (footnote omitted), and "may also examine the contents of any containers found within the passenger compartment," *id.,* "[including] closed or open glove compartments...." *Id.* at 460 n. 4, 101 S.Ct. at 2864 n. 4. The *Belton* court found the passenger compartment of an automobile to be within the reach of a lawfully arrested occupant, and, therefore, subject to a warrantless search "[regardless of] what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found." *See id.* at 461, 101 S.Ct. at 2864 (quoting *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973)). Thus, *Belton* established a bright-line rule for automobile search cases, carved out of the search incident to arrest doctrine developed in *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).[4]

█ Nonetheless, the *Belton* Court made very clear that the bright-line rule enunciated in that case extended only as far as its factual context.[5] It logically follows that the

4. In *Chimel,* the Supreme Court held that a police officer who makes a lawful custodial arrest may search the person in custody and "the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

   Recognizing that courts have experienced difficulty in applying the *Chimel* standard in specific cases, the *Belton* court articulated its rationale as follows: "[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." 453 U.S.

at 458, 101 S.Ct. at 2863. Moreover, that standard must be "straightforward," "workable," "easily applied, and predictably enforced," allowing them "to reach a correct determination beforehand" as to whether and to what extent they can conduct a warrantless search of the passenger compartment of an automobile incident to a lawful custodial arrest of its *occupant. Id.* at 458–60, 101 S.Ct. at 2863–64 (internal quotes and citations omitted) (emphasis added).

5. *Belton* involved a warrantless search of an automobile which was stopped by a lone state trooper for exceeding the speed limit on the New York Thruway. None of the four men in the car owned the vehicle or was related to the owner.

rule of *Belton* is confined to cases where the police confront, or at least signal confrontation, while a person is an "occupant of an automobile," 453 U.S. at 460, 101 S.Ct. at 2864, although the police may remove the occupant from the vehicle before actually making an arrest or conducting a search.[6] *See id.* at 459, 101 S.Ct. at 2863. Cases that fall outside the scope of *Belton* are subject to the case-by-case analysis inherent in *Chimel's* test of "the area within [an arrestee's] immediate control." 395 U.S. at 763, 89 S.Ct. at 2040. *See United States v. Fafowora,* 275 U.S.App.D.C. 141, 143, 865 F.2d 360, 362, *cert. denied,* 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989); *United States v. Strahan,* 984 F.2d 155, 159 (6th Cir.1993).[7] We are persuaded by the rationale of *Fafowora*[8] and *Strahan.*

In *Fafowora,* two of the defendants, Bullock and Jones, sought to suppress evidence seized by police from the passenger compartment of a motor vehicle they were driving and using to monitor co-defendant Fafowora's heroin purchase from an undercover law enforcement agent posing as a seller. Although Bullock and Jones were unaware of it, their monitoring activities were being monitored, in turn, by law enforcement

---

While checking the permits of the vehicle's occupants, the officer spotted an envelope inside on the floor of the vehicle which he associated with marijuana. He also smelled burnt marijuana. The officer then ordered all four occupants out of the car and placed them under arrest for possession of marijuana. He patted each man down and placed each one in a separate location. He then retrieved the envelope and found that, indeed, it contained marijuana. After advising the arrestees of their rights, he searched them in turn. He then proceeded to search the passenger compartment of the car, during which he found a black leather jacket belonging to Roger Belton on the back seat which contained cocaine in one of its pockets. 453 U.S. at 455–56, 101 S.Ct. at 2861–62. The Court stated: "Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3.

**6.** The Supreme Court's references in *Belton* to "a search ... after the arrestees are no longer in [the automobile]", *id.* at 459, 101 S.Ct. at 2863, and to "recent occupant[s]" of an automobile, *id.* at 460, 101 S.Ct. at 2864, clearly pertain to occupants who have been removed by the police, which is precisely what occurred in that case.

**7.** *See also Commonwealth v. Santiago,* 410 Mass. 737, 575 N.E.2d 350, 353 (1991) (specifically finding *Belton* inapplicable because "the defendant already had left his automobile by the time the officers approached and apprehended him"); *State v. Bennett,* 516 So.2d 964 (Fla.Dist.Ct.App. 1987) (*Belton* inapplicable where appellant was already walking away from his car at the time he was first encountered and arrested by police). *Cf. State v. Tompkins,* 144 Wis.2d 116, 423 N.W.2d 823 (1988) (under state law, search was not incident to arrest where arrest occurred inside tavern and arrestee was brought outside where his vehicle was located and searched).

The government cites no case which supports the directly contrary conclusion that an individual who has exited and is walking away from his or her vehicle should be considered an "occupant" under *Belton.* All of the cases cited by the government in support of its position on this issue are distinguishable. *See, e.g., People v. Stoffle,* 1 Cal.App. 4th 1671, 1683, 3 Cal.Rptr.2d 257, 263 (1991) (upholding search of automobile which the arrestee was standing next to and into which he had leaned just before he was confronted and arrested by police officer on an outstanding warrant; case turned on the fact that the arrestee "was physically present in the car just prior to arrest"); *State v. McLendon,* 490 So.2d 1308 (Fla.Dist.Ct.App.1986) (conclusively labeling any former occupant of a car standing outside and somewhat near it as a "recent occupant" without considering whether *Belton* supports such a construction); *State v. Saufley,* 574 So.2d 1207 (Fla.Dist.Ct.App.1991) (arrest scenario began while arrestee still in car); *State v. Gonzalez,* 1 Neb.C.A. 152, 487 N.W.2d 567 (1992) (arrestee pulled over by police but got out of car before police could remove or order him from it); *State v. Mercer,* 45 Wash.App. 769, 727 P.2d 676 (1986) (does not construe or purport to construe *Belton* or the term "occupant" as used in that case); *State v. Fore,* 56 Wash.App. 339, 783 P.2d 626 (1989) (does not either construe or purport to construe *Belton* or the meaning of the term "occupant" as used in that case).

*But cf. United States v. Arango,* 879 F.2d 1501, 1506 (7th Cir.1989) (warrantless search of vehicle which police officers followed before they initiated contact with appellants, which was after appellants had pulled over and parked it, held valid as incident to subsequent arrest one block away), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990).

**8.** Moreover, "we believe that we should treat [*Fafowora*] as persuasive authority both on the basis of its reasoning and in the interest of harmony between court systems...." *Hornstein v. Barry,* 560 A.2d 530, 536 n. 15 (D.C.1989) (en banc).

agents. When Bullock and Jones discovered that Fafowora had been arrested, they sped away from the area. Still unaware that they were being followed, they parked and exited their vehicle. Law enforcement agents confronted and arrested them approximately one car length from the vehicle as they were walking away. The agents searched the vehicle immediately thereafter and found drugs. The trial court upheld the search pursuant to *Belton;* however, the U.S. Court of Appeals for the District of Columbia Circuit held that *Belton* was inapplicable under the circumstances. In *Fafowora* the court articulated its rationale as follows:

> By applying a bright-line rule that the passenger compartment lies within the reach of the arrested occupant, *Belton* sought "to avoid case-by-case evaluations" of whether the defendant's area of control within the automobile extended to the precise place where the policeman found the weapon or evidence. No such ambiguity exists, however, where the police come upon the arrestees outside of an automobile. Under such circumstances, the rationale for *Belton*'s bright-line rule is absent; instead, the normal framework of *Chimel* applies.

*Fafowora,* 275 U.S.App.D.C. at 143, 865 F.2d at 362 (citation omitted).

In *Strahan,* two police officers acting on an informant's tip followed Strahan to a motel lounge where he reportedly sold cocaine. The officers saw Strahan park at the back of the lounge and then hurry away from the vehicle. The officers believed Strahan moved hurriedly because he recognized their undercover vehicle from a previous arrest. Once Strahan had moved toward the lounge, one of the officers jumped out of his car and apprehended him outside the doorway of the lounge, which was approximately thirty feet from Strahan's automobile. Strahan was arrested after cocaine was discovered during a pat down and search of his person. The officers then searched Strahan's car and found a gun. The U.S. Court of Appeals for the Sixth Circuit reversed the trial court's denial of Strahan's motion to suppress the gun. *See Strahan, supra,* 984 F.2d at 156–57.

Persuaded by the rationale of *Fafowora,* the *Strahan* court held *Belton* to be inapplicable because "Strahan was a good distance away from the automobile when confronted and arrested by the officers." 984 F.2d at 159. The court explained that *Belton* applies "only where the police initiate contact while the defendant is within his automobile.... Indeed, *Belton* clearly limits its application to only those settings where an officer makes a custodial arrest of the occupant of an automobile...." *Id.* (internal quotes and citation omitted).

### III.

This court first had occasion to consider and apply the bright-line rule of *Belton* in *Smith v. United States,* 435 A.2d 1066, 1069 (D.C.1981) (per curiam), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982). Thereafter, we applied the rule in *Staten v. United States,* 562 A.2d 90, 91 (D.C.1989), and in *United States v. Harris,* 617 A.2d 189 (D.C.1992). *Cf. Turner v. United States,* 623 A.2d 1170 (D.C.1993).

All of those cases in which we applied *Belton,* however, involved factual scenarios wherein the police initiated contact with the defendant while he or she was still within the automobile subsequently searched without a warrant. In *Smith,* 435 A.2d at 1067, a police officer initiated contact with appellant by "flash[ing] his lights and [then] ma[king] a 'traffic stop'" of the vehicle appellant was driving. In *Staten,* 562 A.2d at 90, police officers stopped the car in which appellant, the owner, was a passenger after observing the vehicle make an illegal U-turn. In *Harris,* 617 A.2d at 190, police officers signaled the car in which appellant was a passenger to stop after observing that it failed to stop for a red light. Finally, in *Turner,* 623 A.2d at 1171–72, police officers, who were collaborating with the FBI on a task force concerned with repeat offenders, were ordered to follow and then to stop the car driven by appellant, which they did. Because appellants in each of these earlier cases were truly "occupants" within the meaning of *Belton,* 453 U.S. at 459–60, 101 S.Ct. at 2863–64, we applied that case's rule for warrantless automobile searches. Following application of the two-

pronged test fashioned by this court in *Smith, supra,* 435 A.2d at 1068,[9] we sustained each vehicle search as being valid and incident to a lawful custodial arrest. These authorities are inapposite to the present case. Clearly, appellant had left the vehicle and become a pedestrian before the police officer initiated contact with him; he was not an "occupant" within the meaning of *Belton, supra,* 453 U.S. at 459–60, 101 S.Ct. at 2863–64.

## IV.

■ To extend the definition of "occupant" to include a person who has parked, locked, and walked fifteen to twenty feet away from an automobile before being stopped and arrested, and, therefore, to consider that automobile subject to a warrantless search incident to arrest, would, as *amicus* suggests, indelibly blur the bright-line rule that the Supreme Court painstakingly drew in *Belton,* 453 U.S. at 457–62, 101 S.Ct. at 2862–65. Indeed, it would defeat the whole purpose of having a bright-line rule, which, in reality, would be severed, without any limiting principle, from the foundation of its rationale in *Chimel.*[10] This would have

serious implications for any person who exits a car in the District of Columbia. *See Belton,* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3. *See also United States v. Vaughan,* 718 F.2d 332, 333–34 (9th Cir.1983) ("Any extension beyond the exact limits set by *Belton* . . . would open a new set of temporal and spacial uncertainties, as well as increase the likelihood of unjustified invasion of the privacy of individuals.").

■ Mindful of the cardinal principle of Fourth Amendment jurisprudence that exceptions to the warrant requirement must be " 'jealously and carefully drawn,' " *see Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (plurality opinion) (footnote omitted), we conclude that the search of the locked glove compartment[11] was not a valid search incident to appellant's arrest for driving without a license under either *Belton* or *Chimel,* and, therefore, not reasonable under the Fourth Amendment.[12]

For the foregoing reasons, we reverse appellant's conviction for possession with intent to distribute heroin and remand the case to the trial court for further proceedings in

---

**9.** The two-pronged test, which *Smith* concluded was prescribed by *Belton,* requires a court to determine: "(1) whether the police had probable cause to make the arrest and, if so, (2) whether the search of the automobile was a 'contemporaneous incident of that arrest.' " *Id.* at 1068 (citing *Belton, supra,* 453 U.S. at 460, 101 S.Ct. at 2864).

**10.** The inapplicability of *Belton* leads us back to *Chimel. See* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3. The government, however, does not argue that we should uphold the search as incident to appellant's arrest under *Chimel*—and rightly so. Quite clearly, the passenger compartment of the automobile, which appellant had parked fifteen to twenty feet away, was not within the immediately surrounding area where he could reach to obtain a weapon or destroy evidence at the time Officer Christian initiated contact with him. As the Supreme Court reasoned in *Chimel:* "No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive

searches on the other." 395 U.S. at 766, 89 S.Ct. at 2041–42 (footnotes omitted).

**11.** The fact that the glove compartment was locked is irrelevant to our decision. *Belton* does not apply because the appellant had locked the car and walked away from it before either the arrest or the search. If the car could be validly searched under *Belton,* then the search could lawfully include the glove compartment, locked or unlocked.

**12.** We find no error in the trial court's ruling that the absence of a front tag on the automobile constituted reasonable articulable suspicion justifying the stop of appellant by the police officer. *See generally* D.C.Code § 40–105(a)(1)(B) *(1990)* (It is unlawful for any person to operate a motor vehicle without the identification tags required for such operation.); *Taylor v. United States,* 259 A.2d 835, 837 (D.C.1969) (A police officer may arrest an individual for a misdemeanor offense without a warrant if the offense is committed in his presence.); *United States v. Montgomery,* 182 U.S.App.D.C. 426, 430, 561 F.2d 875, 879 (1977) ("The police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is seen or suspected."); *United States v. Hill,* 458 F.Supp. 31, 32 (D.D.C.1978) (same).

accordance with this opinion.[13]

*So Ordered.*

13. In view of our conclusion that appellant was not an occupant of the vehicle within the meaning of *Belton*, 453 U.S. 454, 101 S.Ct. 2860, it is not necessary to reach the issue of whether, *vel non*, the search of the vehicle was contemporaneous as a matter of law.