Present:  All the Justices

TODD M. GLASCO

v. Record No. 980909  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    February 26, 1999
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA


After a bench trial on December 5, 1996, Todd M.
Glasco was convicted in the Circuit Court of the City of
Newport News of possession of cocaine with intent to
distribute, in violation of Code § 18.2-248, and possession
of a firearm while in possession of cocaine, in violation
of Code § 18.2-308.4.[1]  We granted Glasco this appeal on a
single issue regarding the legality of a search of the
passenger compartment of his vehicle incident to his
arrest.  Because we conclude that he was a recent occupant
of the vehicle prior to his arrest, we will affirm the
judgment of the Court of Appeals finding that the search
was lawful.

I.

---

[1] The trial court sentenced Glasco to 12 years
imprisonment, 9 years suspended, on the conviction for
possession of cocaine with intent to distribute; and five
years imprisonment, 4 and one-half years suspended, on the
conviction for possession of a firearm.

On May 4, 1996, around 11:00 o'clock p.m., Wesley T. Filer, a uniformed police officer for the City of Newport News, was on duty and patrolling in a marked police vehicle when he observed a vehicle that he suspected was being operated by Glasco. Filer was familiar with both the vehicle and Glasco because of a recent encounter with Glasco. Filer had arrested Glasco on an outstanding capias for failure to pay traffic fines approximately two weeks prior to this particular evening. Based on his knowledge that a driver's failure to pay fines normally resulted in suspension of that person's operator's license and given his previous arrest of Glasco, Filer suspected that Glasco's license to operate a motor vehicle had been suspended. However, Filer decided not to stop the vehicle at that time. Instead, he chose to follow the car so that he could determine whether Glasco was, in fact, the driver.

While following the vehicle, Filer contacted his dispatcher and requested that a check be made with the Division of Motor Vehicles (DMV) in order to determine the status of Glasco's operator's license. Before Filer received a response to his request, Glasco pulled his vehicle over to the right-hand side of the street and legally parked it there. Glasco then got out of the vehicle and began to walk toward a house on the other side

2

of the street.  At that point, Filer stopped his police cruiser approximately 20 to 30 feet behind Glasco's vehicle.  After activating his rear strobe light and exiting his police car, Filer called out, "Mr. Glasco, you don't have a valid license, do you?"  According to Filer, Glasco then turned around and began walking toward Filer, at which time Glasco answered, "Come on, Filer, can't you just give me a break?"  Filer requested Glasco to show some form of identification.  Glasco produced a Virginia identification card but no operator's license.  In the meantime, Filer learned, based on the check with DMV, that Glasco's operator's license was, in fact, suspended.  Thus, he charged Glasco with "driving under suspension" and placed him under arrest.

Incident to the arrest, Filer searched Glasco's person and found two small bags containing marijuana in the right, front pocket of Glasco's shorts.  He also found $650 in cash and a pager on Glasco's person.  Filer then put Glasco in the backseat of his police vehicle and asked a backup police officer, John V. Polak, to search Glasco's car. During this search, Polak found a .38 caliber handgun in the pocket of the driver's door and a clear, plastic bag containing, what he thought was and later, when analyzed,

3

proved to be, crack cocaine under the floor mat on the driver's side of the vehicle.

At a hearing before the trial court on a motion to suppress the evidence found during the search of the vehicle, Filer admitted that he "had no probable cause to believe" that there was any contraband or narcotics in the vehicle when he asked Polak to search it. He did, however, assert that he had a "hunch there might be some narcotics located in the vehicle" based on information that he had received in the past regarding Glasco's involvement with narcotics, and because he had recovered narcotics from his person. The trial court concluded that, once Filer found drugs in Glasco's pocket, there was "probable cause to believe possibly there [were] narcotics in the vehicle." Accordingly, the court overruled Glasco's motion to suppress the evidence recovered during the search of the vehicle.

Before the Court of Appeals, Glasco challenged the sufficiency of the evidence to support his convictions and the legality of both the initial encounter with the police officer and the subsequent search of his vehicle incident to his arrest. With regard to the issue before this Court, the Court of Appeals concluded that the search of Glasco's automobile incident to arrest was lawful because it was

4

"contemporaneous with the arrest and the arrestee's recent occupancy of the vehicle." Glasco v. Commonwealth, 26 Va. App. 763, 773, 497 S.E.2d 150, 154 (1998).[2] Thus, the Court of Appeals affirmed the judgment of the trial court. Id. at 776, 497 S.E.2d at 156.

## II.

We begin our analysis of a search incident to arrest with the decision of the United States Supreme Court in Chimel v. California, 395 U.S. 752 (1969). In that case, the Court defined the parameters of a lawful search incident to arrest:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control" — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

---

[2] The Court of Appeals also upheld the initial stop of Glasco and found sufficient evidence to support Glasco's convictions.

5

Id. at 762-63.

Several years after the Chimel decision, the Supreme Court acknowledged that the extent of the area that is within an arrestee's control and thus subject to being searched had been construed in different ways. United States v. Robinson, 414 U.S. 218, 224 (1973). With regard to the search of a vehicle incident to arrest, the Supreme Court later stated that the "courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant." New York v. Belton, 453 U.S. 454, 460 (1981). Thus, the Court established a "bright-line" rule to govern such searches: "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id.

Using this rule, the Court upheld the legality of the automobile search at issue in Belton. The police officer in that case had stopped a vehicle, in which Belton was a passenger, for travelling at an excessive rate of speed. Id. at 455. After directing Belton and the other occupants to get out of the automobile, the officer arrested them for

6

unlawful possession of marijuana. Incident to the arrest, he searched the interior passenger compartment of the vehicle. Id. at 456. During the search, the police officer found cocaine in the pocket of Belton's jacket that had been lying on the back seat of the car. Id.

Belton established a two-part inquiry for determining the legality of a search of a vehicle incident to arrest: (1) whether the defendant was the subject of a lawful custodial arrest; and (2) whether the arrestee was the occupant of the vehicle that was searched. People v. Savedra, 907 P.2d 596, 598-99 (Colo. 1995). The present appeal involves the second part of the inquiry and requires that we address the scope of the terms "occupant" and "recent occupant" as used by the Supreme Court in Belton.

Glasco contends that the search of his vehicle violated his Fourth Amendment right against unreasonable searches and seizures because he was not a recent occupant of the vehicle at the time of his arrest. He had parked his vehicle and was walking across the street when Filer first initiated contact with him. Further, argues Glasco, he was sitting in the back seat of Filer's police cruiser, parked 20 to 30 feet behind Glasco's vehicle, when Polak actually searched the vehicle. Thus, according to Glasco,

7

he was not in a position to seize a weapon out of the vehicle or to destroy evidence in it.

Initially, we conclude that certain facts in this case do not render the search of Glasco's vehicle outside the parameters of a lawful search incident to arrest. The fact that Glasco was not physically in the vehicle when he was arrested or when Polak searched the vehicle does not mean that Glasco was not a recent occupant of the vehicle. The defendant in Belton likewise was outside the vehicle when the police officer arrested him and conducted the vehicle search. 453 U.S. at 457. "A police officer may search the passenger compartment of an automobile incident to the lawful custodial arrest . . . even if the arrestee has been separated from his car prior to the search." United States v. Mans, 999 F.2d 966, 968-69 (6th Cir. 1993); accord United States v. Snook, 88 F.3d 605, 608 (8th Cir. 1996); United States v. Milton, 52 F.3d 78, 80 (4th Cir. 1995); United States v. Franco, 981 F.2d 470, 473 (10th Cir. 1992); United States v. Karlin, 852 F.2d 968, 971 (7th Cir. 1988).

Similarly, the fact that Glasco was sitting in the back seat of Filer's police cruiser when Polak searched the vehicle, thus arguably not in a position to seize a weapon or destroy evidence, does not change the result. "[O]fficers may conduct valid searches incident to arrest

8

even when the officers have secured the suspects in a squad car and rendered them unable to reach any weapon or destroy evidence." United States v. Willis, 37 F.3d 313, 317 (7th Cir. 1994); accord United States v. Patterson, 993 F.2d 121, 123 (6th Cir. 1993); United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir. 1985); Gundrum v. State, 563 So.2d 27, 28-29 (Ala. Crim. App. 1990); State v. Weathers, 506 S.E.2d 698, 699 (Ga. App. 1998); but see United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987).

The pivotal fact in this case is that Glasco had voluntarily exited the vehicle before Filer initiated any contact with him, either by confronting Glasco directly or by signaling confrontation with the lights or siren on the police cruiser. Other courts that have considered the question whether an arrestee in this situation is still a recent occupant of a vehicle have reached differing conclusions.

A number of jurisdictions have held that an arrestee is an occupant of a vehicle only when the police officer arrests or at least initiates contact with the defendant while the defendant is inside the automobile. See United States v. Hudgins, 52 F.3d 115, 119 (6th Cir.), cert. denied, 516 U.S. 891 (1995) ("[W]here the defendant has voluntarily exited the automobile and begun walking away

9

from the automobile before the officer has initiated contact with him, the case does not fit within Belton's bright-line rule."); State v. Vanderhorst, 419 So.2d 762, 763-64 (Fla. Dist. Ct. App. 1982) (holding Belton not applicable where defendant was attaching tow rope to vehicle when police approached and arrested him for DUI); Commonwealth v. Santiago, 575 N.E.2d 350, 353 (Mass. 1991) (holding search of vehicle did not qualify as search incident to arrest because defendant had already exited automobile when officers apprehended him); People v. Fernengel, 549 N.W.2d 361, 362-63 (Mich. App. 1996) (finding Belton not applicable when defendant voluntarily left vehicle before police initiated contact).

Other courts have reached contrary results. See Snook, 88 F.3d at 608 (holding that arrestee was occupant of vehicle even though he had voluntarily stepped out of car as police officer arrived); Willis, 37 F.3d at 317 (ruling that Belton applied where police officer saw arrestee sitting in vehicle and then sneaking out of it before officer initiated any contact with arrestee); United States v. Arango, 879 F.2d 1501, 1506 (7th Cir. 1989), cert. denied, 493 U.S. 1069 (1990) (finding that defendant, who was first detained by police while walking away from vehicle, then fled, was arrested one block from vehicle,

10

and was then returned to vicinity of vehicle by police, was recent occupant under Belton); State v. McLendon, 490 So.2d 1308, 1309-10 (Fla. Dist. Ct. App. 1986) (extending Belton to justify vehicle search where driver voluntarily got out of vehicle and was arrested inside service station twenty to thirty feet away from vehicle); Savedra, 907 P.2d at 599 ("Belton can include situations where the occupant of a vehicle anticipates police contact and exits the vehicle immediately before that contact occurs."); People v. Bosnak, 633 N.E.2d 1322, 1326 (Ill. App. 1994) (holding that arrestee was recent occupant of vehicle under Belton rule where police officer followed vehicle but did not initiate contact until arrestee parked vehicle and walked ten yards away).[3]

As previously stated, the justification for a search incident to arrest is to confiscate weapons that could

---

[3] Additionally, we infer from the Supreme Court's decision in Michigan v. Long, 463 U.S. 1032 (1983), that initial contact by a police officer before an arrestee exits a vehicle is not required. In that case, the defendant met the police officers at the rear of his vehicle after he had swerved off into a ditch. Id. at 1035. Although the court upheld the legality of the officer's subsequent search of the defendant's vehicle based on the principles enunciated in Terry v. Ohio, 392 U.S. 1 (1968), the Court also stated that "[i]t is clear . . . that if the officers had arrested Long for speeding or for driving while intoxicated, they could have searched the

11

endanger the safety of the arresting police officer and to prevent the destruction of evidence.  Chimel, 395 U.S. at 763; Agnello v. United States, 269 U.S. 20, 30 (1925).  The Supreme Court's purpose for enunciating the Belton "bright-line" rule was twofold.  The Court wanted to create a straightforward definition of the area that is within the immediate control of the arrestee, thus providing "'[a] single familiar standard . . . to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.'"  Belton, 453 U.S. at 458 (quoting Dunaway v. New York, 442 U.S. 200, 213-14 (1979)).  The Court also sought to eliminate the need for litigation in every case to determine whether the passenger compartment of a vehicle is within the scope of a search incident to arrest.  McLendon, 490 So.2d at 1309-10.

Given these reasons, we are not persuaded by the authorities that have decided that an arrestee is an occupant or recent occupant of an automobile only if the police officer initiates contact with the arrestee before that person exits the vehicle.  That kind of limitation assumes that an individual, who voluntarily gets out of an

_____

passenger compartment under [Belton]."  463 U.S. at 1035

12

automobile, is not aware of the presence of a police officer, or having such knowledge, it did not prompt the person to exit the vehicle.  We do not believe that those assumptions are always warranted.  Moreover, a knowledgeable suspect has the same motive and opportunity to destroy evidence or obtain a weapon as the arrestee with whom a police officer has initiated contact.  That suspect could also conceal evidence in the vehicle and effectively prevent an officer from discovering it by getting out of his or her automobile.

Thus, as in the present case, when a police officer observes an automobile, follows it because of his or her prior knowledge regarding the vehicle and its suspected driver, and arrests the driver in close proximity to the vehicle immediately after the driver exits the automobile, we conclude that the arrestee is a recent occupant of the vehicle within the limits of the <u>Belton</u> rule.  Accordingly, the search of the passenger compartment of Glasco's vehicle was a lawful search incident to arrest.

For these reasons, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

_____

n.1.

JUSTICE LACY, with whom JUSTICE KOONTZ joins, concurring.

In this case the trial court denied Glasco's motion to suppress the evidence obtained as a result of the search of Glasco's car because it found that the police officer had probable cause to conduct the search. The trial court specifically held that the search was not justified as a search incident to arrest. As I explain in this opinion, I believe the trial court was correct on both rulings. Therefore, although I disagree with the opinion of the Court of Appeals and the opinion of the majority of this Court regarding the validity of the search, I concur in the result reached by the majority affirming the conviction of the defendant.

### I.   Search Incident to Arrest

The majority concludes that the search of the vehicle in this case was a valid search incident to arrest because it came within the rule announced in New York v. Belton, 453 U.S. 454 (1981). That rule, as stated by the Supreme Court is:  "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  Id. at 460 (footnotes omitted).

14

To reach its conclusion in this case, the majority applies the rule in Belton to facts different from those recited in that case in that the arrestee here was not an occupant of the vehicle when arrested. This nonconforming fact, standing alone, is not fatal, however, because in Belton itself the defendant was not an occupant of the vehicle when arrested; he had gotten out of the vehicle at the direction of the arresting officer just prior to the arrest. Due to this discrepancy between the rule as stated in Belton and the facts of Belton, references in that opinion to a "recent occupant" of a vehicle, see id., have been incorporated into the rule itself. However, nothing in Belton specifically defined what circumstances qualified an arrestee as a "recent occupant."

Consequently, from its inception, application of the so-called "bright line" Belton rule has not provided clear resolution of search issues in cases with facts that do not mirror the facts in Belton or the precise words of the rule. To date, the U.S. Supreme Court has not addressed whether arrestees with these varying types of connections to the vehicle searched are "recent occupants" of the

vehicles under Belton.[4]  However, other federal and state jurisdictions have considered a variety of factual circumstances.

As indicated by the majority, the analysis and results reached in those jurisdictions are far from uniform.  Some jurisdictions have applied the Belton rule to validate a search of a vehicle only when the officer arrests or initiates contact with the arrestee while he or she is still in the automobile.  Other jurisdictions have extended the Belton rule through a broader interpretation of "recent occupant," thus validating searches of vehicles where the arrestee voluntarily left the vehicle and proceeded some distance from the vehicle before arrest.  We have not previously considered this issue.

The majority resolves this case by simply reviewing the two lines of cases from other jurisdictions, rejecting the more restrictive approach, and, without further consideration of the specific facts of this case in light of the rationales used by those jurisdictions adopting a more expansive application of the Belton rule, concluding

---

[4] In Michigan v. Long, 463 U.S. 1032 (1983), the defendant had crashed the car in a ditch and was standing near the opened driver's side door when the police made the arrest.  As the majority recognizes, the statements in that

16

that the defendant here was a "recent occupant of the vehicle" under Belton, thus validating the search of his vehicle as a search incident to arrest.  In my opinion, determining whether, under the facts of this case, Glasco is a "recent" occupant of the vehicle and thus subject to the Belton rule, requires an examination of Fourth Amendment principles in general and those involved in Belton in particular.

The Fourth Amendment to the United States Constitution protects persons from unreasonable searches by the government.  The Supreme Court has interpreted this to mean that before the police may search any area in which a suspect has a reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 357 (1967), the police must have probable cause to believe that the area to be searched contains evidence of criminal activity by the suspect and must obtain a search warrant from a neutral magistrate.  See United States v. Harris, 403 U.S. 573 (1971).  The Supreme Court has recognized that citizens have a reasonable expectation of privacy while in their vehicles.  Delaware v. Prouse, 440 U.S. 648, 667 (1979).

_____

opinion regarding the application of Belton to the facts of that case were dicta.

17

Certain exceptions to the warrant requirement have been recognized, such as the right of the police to search the person of the arrestee incident to arrest, see Weeks v. United States, 232 U.S. 383, 392 (1914), and the area within his control. See Carroll v. United States, 267 U.S. 132, 158 (1925). The justifications for this exception to the warrant requirement are the need to insure the safety of the arresting officer by allowing him to disarm the suspect to take him into custody and the need to preserve evidence. See, e.g., United States v. Richardson, 414 U.S. 218, 234 (1973).

In Chimel v. California, 395 U.S. 752 (1969), the Supreme Court reversed the trend of a series of cases that had broadened the scope of a warrantless search incident to arrest. 395 U.S. at 768 (overruling United States v. Rabinowitz, 339 U.S. 56 (1950) and Harris v. United States, 331 U.S. 145 (1947)). In Chimel, the Court limited the permissible scope of searches incident to arrest to the area "'within [the arrestee's] immediate control' — construing that phrase to mean the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." Id. at 763. Only when the search is thus limited is it reasonable under the Fourth Amendment, according to the Court, in light of the

rationale for the exception to the warrant requirement recognized in prior cases — safety of the police and preservation of evidence.  Id. at 763-64.

Following Chimel, determining whether a particular area in which incriminating evidence was found was within an arrestee's "immediate control" required an examination of the facts and circumstances surrounding each arrest. Such a case-by-case analysis, particularly in the area of vehicle searches, presented a significant burden to courts and police.

The Belton "bright line" rule was created by the Supreme Court to relieve this burden.  Belton, 453 U.S. at 459-60.  The Court created the rule following a survey of federal circuit court cases decided after Chimel in which the police arrested a vehicle occupant and searched the vehicle.  The survey revealed to the Court that whenever a vehicle occupant was arrested, "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary [item].'" Id. at 460, citing Chimel, 395 U.S. at 763.  Based on this recurring fact pattern, the Supreme Court adopted a factual presumption that, if the arrestee is an occupant of the

vehicle, the arrestee can reach in the vehicle and get a weapon or destroy evidence. Following Belton, a showing of the actual fact of occupancy would automatically provide the presumed fact of access to the passenger compartment which is required by Chimel as a prerequisite for a warrantless search of a vehicle incident to arrest. The Supreme Court made it clear that its holding was "in no way alter[ing] the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. at 460 n. 3.

Turning to the task at hand, although the cases from other jurisdictions addressing this issue are informative, our task is to independently consider and apply the principles of Chimel and Belton to determine whether, under the facts of this case, Glasco was a "recent occupant" of a vehicle for purposes of the Belton rule. A review of the cases surveyed and cited by the Supreme Court in Belton as supporting the factual presumption of access to the vehicle created in that case reveals that in all but one case, the arrestee was arrested while in the vehicle, and in all the cases the search of the vehicle occurred after the arrestees exited the vehicles at the direction of the police and while they were still within close proximity of the vehicles. United States v. Rigales, 630 F.2d 364, 366

20

(5th Cir. 1980); United States v. Benson, 631 F.2d 1336, 1337 (8th Cir. 1980), vacated, 453 U.S. 918 (1981); United States v. Sanders, 631 F.2d 1309, 1312-13 (8th Cir. 1980); United States v. Dixon, 558 F.2d 919, 922 (9th Cir. 1977); United Stated v. Frick, 490 F.2d 666, 668 (5th Cir. 1973). These fact patterns along with the facts in Belton suggest that in using the phrase "recent occupant" in Belton, the Supreme Court was referring to persons arrested under these or similar circumstances.

For purposes of this case, however, we need not engage in speculation as to whether the fact patterns surveyed in Belton would be the only circumstances under which the search of a vehicle incident to arrest under the Belton rule could pass Fourth Amendment scrutiny. To resolve this case, we need only look to one of the "fundamental principles" of Chimel cited in and unaltered by Belton: The scope of a warrantless search must be "'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Belton, 453 U.S. at 457 (citations omitted). If there is no connection shown between a person's occupancy of a vehicle and his arrest, then extending the scope of the search incident to arrest to the vehicle is neither "tied to" nor "justified by" circumstances of the arrest. Thus, to qualify as a valid

warrantless search incident to arrest, at a minimum, some connection must exist between occupancy of the vehicle and the circumstances of the arrest.[5]  Whether such a connection exists will depend on the facts of each case.

At the time of the arrest in this case, Glasco had lawfully parked his vehicle, crossed the street, and was thirty feet away from the vehicle, heading toward the home of a friend.  The police had not initiated any contact with Glasco prior to that time.  The record contains no indication that Glasco was aware of the police when he parked and exited his vehicle.

This case is not a case in which the police have officially engaged and are following a suspect and in which the suspect stops his vehicle, gets out of it, runs away from the police, and is arrested at some point away from the vehicle.  See, e.g., White v. Commonwealth, 24 Va. App. 446, 482 S.E.2d 876 (1997).  Those circumstances may suggest some connection between the circumstances surrounding the arrest and the arrestee's occupancy of the

---

[5] By "circumstances of the arrest," I do not mean the grounds for arrest.  The "'danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest.'"  Knowles v. Iowa, __ U.S. __, No. 97-7597, Dec. 8, 1998, 67 U.S.L.W. 4027, 4028, citing United States v. Robinson, 414 U.S. 218, 234 n.5 (1973).

22

vehicle.  In this case, there is no evidence that Glasco was aware of the police presence or took any action as a result of the police presence while he was in his vehicle or when he stopped, parked, and exited the vehicle.  He was neither approached nor arrested by the police until he had completely left the area of the vehicle, crossed the street and was proceeding toward the house of a friend.  When approached by the police, Glasco did reverse his course and take steps toward the police, but there is nothing in the record that indicates Glasco was heading back to the vehicle.  On these facts, there is simply no connection between Glasco's occupancy of his vehicle and his arrest.  Therefore, in the absence of such a connection, there is no basis to deem Glasco a "recent occupant" for purposes of the Belton rule.

The majority expresses a concern for adopting a rationale that might give a suspect the opportunity "to conceal evidence in the vehicle and effectively prevent an officer from discovering it by getting out of his or her automobile."  While the concealment of evidence is a valid concern of law enforcement, the Fourth Amendment nevertheless reflects the belief held in our system of government that the right to be free from unreasonable governmental searches supersedes the interest of the police

in unfettered access to one's home, person, or automobile, even to recover evidence concealed therein.  As the Supreme Court stated in Chimel:

> We are not dealing with formalities. The presence of a search warrant serves a high function.  Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police.  This was done not to shield criminals nor to make the home a safe haven for illegal activities.  It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law . . . .  We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.

395 U.S. at 761, citing McDonald v. United States, 335 U.S. 451, 455-56(1948).

Therefore, the mere ability of a citizen to put evidence out of the reach of law enforcement by placing it within an area protected by the right to privacy is not sufficient to justify a warrantless search.[6]

Furthermore, as I have previously indicted, we do not need to draw a "bright line rule" to apply in circumstances where an arrestee is a "recent occupant" of a vehicle for

---

[6] Of course, under the analysis I suggest here, action by a vehicle's occupant shown to be taken in response to

purposes of the Belton presumption.  Our responsibility is to look at the facts of this case and to determine whether the arrestee's occupancy of the vehicle was sufficiently connected with the circumstances of his arrest to justify application of the Belton rule.  For the reasons stated above, it is my opinion that the rule set out in the Belton case is not applicable to the facts of this case.

## II.  Probable Cause

The trial court held that the search of Glasco's vehicle did not violate Glasco's Fourth Amendment rights because the police officer had probable cause to conduct the search.  Glasco appealed this holding to the Court of Appeals and argued before that court that probable cause to search the vehicle did not exist.  He made the same arguments in this Court.[7]

Whether probable cause exists is a question of law and fact and is reviewed de novo on appeal.  Ornelas v. United

_____

police presence may subject the actor to search of the vehicle under Belton.

[7] Neither the majority opinion nor the opinion of the Court of Appeals addresses this issue.  The Commonwealth did not address the issue in its brief in this Court, but at oral argument, counsel for the Commonwealth "conceded" that  probable cause to search Glasco's vehicle did not exist.  However, concessions in respect to conclusions of law are not binding upon the parties or the court.  Tuggle v. Commonwealth, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985).

<u>States</u>, 517 U.S. 690, 699 (1996).  The evidence at trial established that, upon searching Glasco incident to his arrest for driving under a suspended license, the officer found two small bags of marijuana, a pager, and $650 in cash.  Six hundred dollars of the $650 was in six separate folds.  The currency in each fold amounted to $100.  The police officer testified that "I had no probable cause to believe [contraband or narcotics were in the vehicle], but I did have a hunch there might be some narcotics located in the vehicle."  The officer had received information in the past that Glasco was involved in narcotics and his "hunch" was based on finding the marijuana when he searched Glasco.

The officer's statement that he did not have probable cause is not dispositive.  Subjective motivations of the officer do not affect the probable cause Fourth Amendment analysis.  <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996).  The probable cause determination is whether the facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.  <u>Id.</u> Applying that standard, the items found as a result of the search of Glasco, including the manner in which the currency was packaged, along with the officer's knowledge of Glasco's involvement with narcotics, were sufficient to provide the officer with probable cause to believe Glasco

was selling or trafficking narcotics and that additional narcotics would be found in the vehicle.

For these reasons I concur in the result reached by the majority.